NEW YORK LIFE INSURANCE & TRUST CO. v. SCHERMERHORN et al.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

1. CONTRACT—CONSTRUCTION—DISTRIBUTION OF ASSETS AMONG HEIRS.

In order to effectuate the plan of the devisees and heirs at law of a testator, whose will had been admitted to probate, to rearrange the respective proportions of the devises to them so as, in view of, but without disturbing, the testamentary disposition of the personal property, to equitably apportion the entire property, they made an agreement to convey the real estate to a third person, and after procuring a decree declaring the will invalid as to real property, to have him, after paying said bequests, pay over the proceeds so that "the entire estate of the testator, both real and personal, less said bequests, should be disposed of" in a prescribed manner, by division among the parties, including the payment of a specified sum to one of them. The agreement was carried out, and a decree entered. Up to that time the real property had been held by a trustee under the will, who had received the rents thereof. In an action to procure a settlement of the trustee's account, it was *held* that the agreement contemplated that all the rents received should be included in the distribution provided for, and that the party to whom the fixed sum was to be paid was *not entitled to any rents, as such,* in addition.

2. TRUSTEE—ACCOUNTING.

If one takes possession of real property as trustee under a will which has been admitted to probate, and under that claim receives rents and profits, and it is finally determined, in an action for partition, that the will is invalid as to real property, he is bound to account to the real owners for the rents and profits received.

Ingraham, J., dissenting.

Appeal from judgment on report of referee.

Action by the New York Life Insurance & Trust Company, under the will of Francis W. Lasak, against Antoinette L. Schermerhorn and others. From a judgment entered on the report of a referee, Schermerhorn and certain other defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Lucius N. Palmer, for appellant Antoinette L. Schermerhorn.

Ralph E. Prime, for appellants Frost's Ex'rs.

Michael H. Cardozo, for appellant Mrs. Ives.

R. E. Robinson, for respondent New York Life Insurance & Trust Cb.

G. G. Reynolds, for respondent Mrs. McKenzie.

F. R. Minrath, for respondent Mrs. Cuthbert.

RUMSEY, J. Francis W. Lasak, a resident of Westchester county, died on the 13th of February, 1889, seised and possessed of a large estate, consisting of real and personal property. He left a will, with several codicils, which were offered for probate to the surrogate of Westchester county, and were by him admitted to probate, after a contest; and his decree admitting the will to probate was affirmed by the court of appeals. 30 N. E. 112. The executor named in the will renounced his trust, and the plaintiff was designated in his place, and letters of administration with the will annexed were issued to it. In pursuance of the authority of those letters, the plaintiff took possession of all the real and personal estate of which Mr. Lasak died the owner, and proceeded to administer upon it according to the will. The heirs at law of Mr. Lasak were four children, and a granddaughter of a deceased son. Mrs. Schermerhorn, one of the appellants here, was one of the children. By the will of her father she received only the income of $30,000 during her life, which was very much less than the share of the estate which she would have taken had her father died intestate; and she was apparently dissatisfied with the provisions of the will, which dissatisfaction existed, to a somewhat less extent, apparently, in the minds of the other heirs at law. After the judgment of the court of appeals affirming the decree of the surrogate had been entered, and some time in the year 1891, Mrs. Cuthbert, one of the daughters of the testator, brought an action for the partition of the real estate of which he died seised. The plaintiff was made a party to that action, as were all the heirs at law of the testator. It was claimed in that action that Francis W. Lasak was not competent to make the will under which the plaintiff claimed to own the real estate, and the action seems to have been brought for the purpose of obtaining a judgment declaring the will to be void. Answers were served by several of the defendants, and the action was ready for trial, when, after some considerable negotiation, an agreement for its settlement was reached between the heirs at law of Mr. Lasak. This agreement was made on the 16th day of June, 1892. It proceeded upon the theory that as to his real estate Mr. Lasak died intestate, on account of the invalidity of his will; and it provided that four of the five heirs

at law should convey their interest in the real estate to Calvin Frost, thus vesting in him the title to four-fifths of that property; the other fifth still remaining in Mrs. Cuthbert, the plaintiff in the action.   It provided further that a judgment should be procured, in a proper action, setting aside the will, and when that had been done the proceeds of the real estate should be divided in a manner more particularly to be mentioned hereafter.   It was originally intended that the plaintiff should become a party to that agreement, but the officers of the plaintiff very properly deemed that, as trustees under the will, it was their duty to defend their trust, and they declined to sign the paper. After their declination, however, the heirs at law, by another paper, reciting the refusal of the plaintiff to join in the contract, ratified and confirmed it.   In pursuance of one of the conditions of this contract, Mr. Frost, to whom four-fifths of the real estate had been conveyed by the heirs at law, was made a party to the action of partition, and answered in it; setting up the invalidity of the will of Francis Lasak, and his title derived from the heirs at law.   Upon the issues formed in that action the case was brought for trial at a term of this court held in Westchester county; and after a vigorous contest a judgment was entered declaring the will to be void, and adjudging that Calvin Frost was the owner in fee of four undivided fifths of the real estate, and Ophelia J. Cuthbert was the owner of the other fifth.   The judgment contained the usual provisions for a sale of the property, which was afterwards had, and the proceeds were divided pursuant to the provisions of the judgment.   This judgment in partition, however, was not entered until the 20th day of January, 1894; and the final judgment confirming the sale was entered on the 16th day of June, 1894. During the time that elapsed from the adjudication of the surrogate of Westchester county sustaining the will of Mr. Lasak to the entry of the final judgment in partition, the plaintiff, claiming to be the owner of the real estate as trustee under the will, had collected the rents, and paid out from them certain expenses, and distributed a portion of them in the manner provided by the will.   After the final sale under the judgment of partition, the plaintiff, whose title had been devested by that judgment, began this action to procure a settlement of its accounts, and an adjudication as to the rights of the several defendants to share in the proceeds of the rents which remained for distribution after the payment of the expenses.   Answers were served in that action, and it was referred to a referee, before whom it was tried, and from the judgment entered upon his report this appeal is taken by several of the defendants.

The principal question presented upon the appeal arises by reason of the claim of Mrs. Schermerhorn, one of the heirs at law, that she is entitled to receive one-fifth of the rents paid over to the plaintiff while it held this real estate as trustee under the will.   Her proposition is that the will having been declared void, and it having been adjudged that Mr. Lasak died intestate as to the real estate, the plaintiff took no title, and is bound to account to the heirs at law for the rents and profits of that property which he held in defiance of their rights.   The plaintiff was a party to the judgment in partition, and insisted strongly upon the validity of the will

under which it claimed to have the title to this property. In that litigation it was defeated, and the judgment entered in that action is conclusive upon the plaintiff that it had no right to take possession of this property; and as a result it is bound to account to the heirs at law for the rents and profits of the real estate, precisely as any other person who takes possession of the real estate to which he has no title is bound to account. If that were all there were of the case, there can be no doubt, not only that the plaintiff would be bound to account to each of the heirs at law for her proportion of the rents received, but that Mrs. Schermerhorn would be entitled to receive one-fifth of them; and this is not substantially denied by anybody. Indeed, the plaintiff, by bringing this action, concedes, substantially, that it is bound to account for these rents to those persons who are entitled to them, and it is a matter of entire indifference to it to whom they are to be paid. But the right of Mrs. Schermerhorn is not determined solely by the considerations above stated. As has been said, on the 16th day of June, 1892, Mrs. Schermerhorn conveyed all her interest in this real estate to Calvin Frost. She, as well as the plaintiff, was a party to the action of partition; and the judgment in that action, that Calvin Frost is the owner in fee of four-fifths of that estate, is binding upon her as well as upon the plaintiff. Her conveyance, upon which this judgment was made, conveyed to Frost, on the 16th day of June, 1892, not only the real estate, but the right to receive the rents, which necessarily followed the conveyance; and therefore, as to the rents received after the 16th of June, 1892, she clearly has no claim upon them. But she does claim that Frost by that agreement was entitled to receive the rents only from its date; and she insists that in the rents which had accrued before that time she is entitled to share as heir at law, because the agreement, in pursuance of which she made the conveyance to Frost, gave him no right to any of the rents which had accrued before its date. This claim is disputed by Frost's executors, who insist that under that agreement all the rents (as well those which had accrued as those which did accrue) are transferred by the heirs at law, and are to be distributed according to the agreement. This makes it necessary to construe the agreement, to ascertain precisely the rights of the parties.

At the time the paper was made, the will of Mr. Lasak had been admitted to probate as a valid will of real as well as personal property. Under it the plaintiff held the title to the whole estate for the purposes of that will. It was receiving the rents of the real estate, as well as the income of the personal estate, for the benefit of the cestuis que trustent. The adjudication of the surrogate was conclusive as to the title to the personal property, which, as appears from the case, amounted to a very large sum,—perhaps equal to one-third of the real estate. The will made bequests of a considerable amount in legacies to various persons, and the executor was authorized to sell the real estate for their payment, if, in his judgment, it should be advisable to do so; so that down to the time of the entry of the judgment in partition the real estate was charged, or might have been charged, with the payment of a large amount

of legacies. Among these legacies was one of $30,000 to Mrs. Schermerhorn, one of the heirs at law of the testator, as well as legacies to his daughter Mrs. Ives and some of his grandchildren. All these people had an interest in the estate, and there seems to have been no desire on the part of any heir at law that they should be deprived of the benefits which they would have been entitled to receive under the will. But the amount of the personal property was so large that the shares of the heirs at law under the will would be considerably affected if that portion of the property was not included in the division which they made; and it was impossible, practically, to make an equal division of the estate, at the same time providing for the legacies, unless the whole estate (both that effectually given by the will, and that as to which the will was void) should be put into hotchpot, and divided among those persons who were making the agreement. They were not able, of course, by the agreement, to divide the personal estate, which had been effectually disposed of by the will; but they could, if they saw fit, take the amount of it into consideration in the division of the real estate, so that as the final result each party, after the division, would have the same amount as though the whole estate (real and personal) had been put into one sum, and divided at one time. The agreement provides that Mrs. Chauvet, Mrs. McKenzie, Mrs. Schermerhorn, and Mrs. Ives (four of the heirs at law) should convey to Mr. Frost all their interest in the real estate; and that conveyance was delivered at the same time the agreement was made. It then provides that the will and codicils of Mr. Lasak, so far as they relate to real estate, should be set aside by a judgment in a proper action, and that in that action a judgment in partition should be entered, directing the sale of the premises, and awarding four-fifths to Calvin Frost. It provided then that Calvin Frost should distribute the proceeds of four-fifths of the property as thereafter described. First he was to pay to the administrator such a sum out of the proceeds as might be required, in addition to the proceeds of the personal estate, to pay the various bequests made by the will, which were ratified and confirmed by the agreement. It was then provided that the residue of the proceeds received by him should be paid so that "the entire estate of Francis W. Lasak (both real and personal), less the payment of the money legacies provided in the will, but including one-fifth of the proceeds realized by Mrs. Cuthbert under the decree in partition," should be disposed of in a way particularly stated. Under this provision, Frost claims that he was entitled to receive, not only all the rents which accrued after the 16th day of June, 1892,—the date of this agreement,—but the rents which had accrued and been paid over before, because he says that it was the clear intention of the parties, as stated in that portion of the agreement recited above, that the entire estate (both real and personal) should be divided. In this contention we concur. It is clear to us that the paper contemplated a division of the entire estate, and that it stood, so far as the parties to it were able to make it stand, in the place of the will of their father, which had been partly set aside, but which, except so far as their own per-

sonal interests were concerned, they did not object to. They took care of all the legacies which were payable as well out of the real as out of the personal estate; they made a division of the entire estate, taking into consideration what had been received by each person out of the personal estate; so that, as the result of the agreement, every person who was a beneficiary under the will, except the parties to that agreement, received precisely what the will gave him, and the parties to the agreement received the remainder of the estate in such proportions as was satisfactory to them. It is quite clear that this distribution required that all the estate (both real and personal) should be taken into consideration,—otherwise no equitable result could have been reached; and the necessary meaning of that portion of the agreement which was quoted above, which required the division to be made so that the entire estate (both real and personal) should be disposed of as prescribed in the agreement, made it imperative to put into the fund for division all the property which was then held under the will of Francis Lasak, and make a final disposition of it, so that when the agreement had been carried out the whole estate had been turned over to the persons who by this agreement were intended to have it. By that agreement Mrs. Schermerhorn was to receive a considerably larger amount than had been given to her by the will, and the precise amount of money, in dollars and cents, which she was to have, and the fund out of which it was to be paid, were specified in the agreement; so that it was absolutely certain that it was intended that she should receive only a certain sum of money, and that the remainder of the estate should be paid over as provided otherwise in the agreement. This was given to her in pursuance of the scheme mentioned above, by which it was said that the division should be made so that the entire estate (both real and personal) should be disposed of. It is very clear that unless the rents were included in the distribution provided for by this agreement the entire estate would not be disposed of as directed by it, and Mrs. Schermerhorn, instead of receiving $50,000, which the agreement provided that she should have, would have received one-fifth of the rents in addition. The result of our examination is that her claim that she is entitled to share in those rents, or in any portion of the estate, in any different way than is provided for in the agreement signed by her, is not well founded; and the judgment of the referee is correct in that regard.

The only other question which arises upon the appeal is raised by the objection of Frost's executors and of Mrs. Ives to the allowance to the plaintiff of certain portions of the rent which were paid by the plaintiff to Mrs. Chauvet after the execution of the conveyance of the 16th day of June, 1892. In its account the plaintiff credits itself with payments of rents to Mrs. Chauvet to the amount of $7,520, made between the 4th day of October, 1892, and the 28th day of May, 1894,—both days inclusive. Mr. Frost claims that, as he was the owner of Mrs. Chauvet's interest at that time, these rents should have been paid to him, and not to her; and Mrs. Ives makes the same claim,—she insisting that she is the owner of these rents by a con--

veyance from Mrs. Chauvet.   So far as her claim to be the owner of the rents is concerned, as between herself and Mrs. Chauvet, it is unnecessary to consider it.   She, with Mrs. Chauvet, had joined in a conveyance of their interest to Mr. Frost; and, so far.as they were concerned, he was the owner of these rents.   When there shall come to be a distribution, in which the respective shares of Mrs. Chauvet and Mrs. Ives are to be determined, it will be time enough to settle the question in what proportion each one is entitled to share in these rents; but that is not the question to be decided here, because, so far as they are concerned, Frost is undoubtedly the owner of them, under the conveyance and the agreement which they made with him. There is no doubt that the conveyance made by these heirs at law to Frost carried the right to receive the rents.   The plaintiff claimed as the owner under the will, but when that claim was adjudged to be invalid by a judgment of partition, to which the plaintiff and Frost were parties, there necessarily followed a duty on the part of the plaintiff to account to Frost for the rents and profits of four-fifths of the estate which he had received under its claim of ownership in hostility to the claim of Frost.   The plaintiff says that, having received these rents under its claim of ownership, it was entitled to proceed with the distribution of them in accordance with the directions of the will until it had received notice of the agreement by which the heirs at law had conveyed to Frost.   But the case shows clearly that, before any payments of rent had been made after the 16th of June, the plaintiff had notice in several ways of this conveyance to Frost, and of the agreement as well.   On the 8th of July, 1892, the counsel for all the parties in the action of partition, including the plaintiff, consented that Calvin Frost might be made a party to that action, and the order recited the conveyance to Frost of four-fifths of this property.   That certainly operated as notice to every party to the action that Frost had received a conveyance to this property, and claimed title to it.   But it further appears that on the 15th day of July one of the parties in that agreement went to the office of the plaintiff with the agreement, and presented it to the president, and asked him to sign it, to which he replied that he would not do it unless Mrs. Ives would guaranty the company 1 per cent. commission on the real estate; and, upon that being declined, he refused to execute it for that reason alone.   We think that the notice to the attorney of the conveyance to Frost of the property, the title to which was in issue in the action, was notice to the plaintiff; but, whether that be so or not, there is no doubt that the presentation of this agreement to the plaintiff's president on the 15th of July, reciting as it did the conveyance to Frost, was all the notice which anybody could require that the rights of those heirs at law had been conveyed to him.   But the plaintiff was entitled to no notice whatever.   If one takes possession of real estate, claiming to own it, and under that claim receives rents and profits, and it is finally determined, in an action brought to take the title away from him, that he does not own it, he becomes a wrongdoer, as to the persons who are adjudged to be the owners; and he is bound to account for those rents and profits

to them, precisely as any other person is who takes the profits of real estate to which he is not entitled.

It is claimed by the plaintiff, too, that it acted as the agent of Frost in distributing these rents. But that claim is clearly untenable. It was claiming in hostility to Frost. What it did was done under the will which Frost was attacking. The title it claimed was that derived from the will, which was not the title adjudged to be in Frost. There was no aspect of the case in which it could be said that the plaintiff was the agent of Frost in receiving and disbursing those rents.

The plaintiff finally claims that Frost ratified its action in paying these rents to Mrs. Chauvet, by a letter dated on the 11th of May, 1894. All that appears with regard to this letter is that it was received at about its date. It is addressed to the plaintiff, and states that a conveyance had been made to him of their interest in the real estate of Mr. Lasak by Mrs. McKenzie and Mrs. Chauvet, and then continues, "I write this to convey my assent to the payment to them of the shares of the income which you would pay to them but for such conveyance." No consideration was paid to Frost for this letter, and it was entirely voluntary, so far as appears. No action was ever taken upon the faith of it, or upon the promise that it would be sent before the time of its date; nor does it appear that the plaintiff changed its position with regard to these rents, in the slightest degree, except as to one payment, by reason of anything said in the letter, or by reason of its receipt. It was clearly no contract, and can operate, if at all, only as a consent or ratification, or by way of estoppel. As a ratification of previous payments, it is entirely ineffectual. It speaks in the future tense. It does not convey the assent of Mr. Frost to payments which had been made, but to payments which they would make; thus clearly referring to what should be done, and not to what had been done. Indeed, there is no evidence that Mr. Frost had any knowledge of what payments had been made to these ladies at that time. An account is printed in the papers, but it nowhere appears that Mr. Frost ever had access to it, or knew of it. But whether he had or not is of no importance, because there was no consideration for this letter, and therefore it created no contractual relations between Frost and the plaintiff which should forbid him to insist upon his rights whenever he had occasion to do so. Neither is there any element of estoppel in the case in regard to it. No action could have been taken upon the faith of it in making the payments before its date, and there is no pretense that after it was received the plaintiff neglected to do anything by way of making itself good on account of those payments, because of this letter. So far, therefore, as the payments made before its date are concerned, it does not take away from Frost the right to have those payments disallowed, and the amount of them added to the sum which should be paid to him. But it appears that after the date of this letter, and on the 28th of May, a payment of $850 was made to Mrs. Chauvet. There is no proof that this payment was made in reliance upon this letter, or that it had any reference to the consent given in the

letter; and yet it may fairly be said, perhaps, that the payment would not have been made, had not this letter been written, and, therefore, that, payment should be allowed to the plaintiff.   This leaves the amount disallowed of these payments to be the sum of $6,670, and the account of the plaintiff should be surcharged with that amount, which should be added to the sum to be paid to the executors of Frost.

There are no other matters in the case which require consideration. The judgment should therefore be modified as indicated above, and as modified affirmed, without costs.   All concur, except INGRAHAM, J., dissenting.

INGRAHAM, J. (dissenting).   I concur with Mr. Justice RUMSEY in the affirmance of the judgment upon the appeal of the defendant Schermerhorn, but I cannot concur with him in the modification of the judgment suggested.   By the conveyance of the property to Frost, he became vested with the title to the property, under an agreement by which it was to be sold by him, and the proceeds distributed in accordance with that agreement.   Under that agreement the defendant Chauvet was to receive a large sum of money, and it is quite clear that Frost's interest in that property was for the benefit of those to whom, under the agreement, its proceeds were to be distributed.   Under these circumstances, when Frost wrote to the company his assent to the payment of those entitled to the rents of this real estate under the will, it was a ratification of any payments which had been made by the trust company of the rents that they had collected to such persons, and an authority to make such payments to such persons in the future.   If Frost had then taken the position that the income collected by the trust company was not to be paid to the beneficiaries under the will, the trust company would have been in a position to recover from them any payments which had prior to that time been made, but these persons to whom the payments had been made were the persons really entitled to the property in the event that the will was held to be void.   They were also entitled to the proceeds of the property, when sold, under the agreement with Frost; and it seems to me that it is unjust now to charge the company with payments made by it out of the income to those who would have been entitled to the income in case the will was held to be valid, when such payments were expressly ratified by Frost after the conveyance to him was made, and when the trust company acted under the authority contained in this letter.   The fact that the letter would not be valid as an agreement, because of a lack of consideration, or was not sufficient to estop Frost from disputing the correctness of the payments which were made, would not prevent its acting as a ratification by Frost of the act of the company in distributing the rents or income of the trust estate received by it; and I think it is unjust to the company now to hold them liable for moneys which they paid to those entitled to the income of the trust property, which payments were made with the express assent of Frost, and ratified by him   I think that the judgment was right, and should be affirmed.