### CHAUVET et al. v. IVES.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

CONTRACTS—CONSTRUCTION—ACTIONS.

Plaintiffs agreed to a proposed scheme for the settlement of a disputed estate on condition that they receive $180,000 therefrom. The property was to be conveyed to F. for sale, and the proceeds to be distributed by him in accordance with the agreement, which recited that, after certain payments had been made, there should be paid to plaintiffs out of a one-third share of the estate the sum of $180,000; and,. if the said one-third share was insufficient to pay said sum, any deficiency should be made up by defendant, to whom it was agreed should belong any excess over the sum so to be paid to plaintiffs realized from such one-third share of the estate. The agreement was signed by plaintiffs and defendant. Subsequently defendant executed to plaintiffs an instrument wherein she guarantied to them the payment of the $180,000. *Held*, that defendant's promise was an original promise to pay plaintiffs $180,000 in case F. did not, and plaintiffs can maintain an action against defendant to recover the difference between the amount received from F. and the $180,000, where F. has sold all the property for sufficient to pay the $180,000, but refuses to pay plaintiffs in full, though he has funds in his hands arising from the sale not yet accounted for.

Appeal from trial term, New York county.

Action by Cordelia D. Chauvet and another against Margaret Ives. From a judgment dismissing the complaint, plaintiffs appeal. Reversed.

Argued before PATTERSON, P. J., and RUMSEY, INGRAHAM, and McLAUGHLIN, JJ.

Abram Kling, for appellants.
Michael H. Cardozo, for respondent.

INGRAHAM, J. The parties to this action, being interested in the estate of one Francis W. Lasak, whose will was in dispute, entered into an agreement with others interested in the estate by which a scheme of settlement advised by Calvin Frost was to be carried out. Annexed to this proposed scheme was an agreement to be signed by all those interested in the estate, and which appears to have been agreed to by all; the plaintiffs, however, making their consent subject to the following condition: "We agree to above on condition that we receive $180,000 net, and that Mrs. Ives receive surplus, if any, under the will, and make up deficiency." Mrs. Ives accepted the condition as follows: "I agree to modify the above agreement by accepting the conditions contained in above, signed by Mrs. Chauvet and Albert

Chauvet." To carry this understanding into effect, a formal instrument was executed by the parties, by which, after providing that all of the property of the estate should be conveyed and transferred to Mr. Frost, it was agreed that out of the proceeds of the sale thereof the sum of $50,000 should be paid to the plaintiff Albert L. Chauvet; that various other payments should be made to the persons named; that out of one-third of the remainder there should be paid to the plaintiff Cordelia D. Chauvet the sum of $130,000; and that, "if the said last mentioned one-third share shall be insufficient to pay the said sum of one hundred and thirty thousand dollars to Mrs. Cordelia D. Chauvet, any deficiency therein shall be made up by Mrs. Margaret Seaman Ives, to whom it is agreed shall belong, and be paid and delivered, any and all payments, property, and moneys which, excepting for this agreement, might belong, be paid, or delivered to Mrs. Cordelia D. Chauvet and Albert L. Chauvet, or either of them, directly or contingently, out or from the estate left by said Francis W. Lasak, deceased"; and this instrument was signed by the parties to this action. The parties interested in the estate, including the parties to this action, then united in conveying to Mr. Frost all of the estate, real and personal, of the testator. There seem to have been several subsequent agreements made between Mrs. Chauvet and the defendant, by one of which the plaintiffs released, sold, and conveyed to the defendant all the rights, claims, and demands which they, or either of them, had to the estate, real and personal, of Francis W. Lasak, deceased, or any part thereof, and the proceeds thereof, upon the condition expressed in the said agreements that there was to be paid out of the proceeds of said estate $50,000 to Mr. Chauvet and $130,000 to Mrs. Chauvet. There was another instrument signed by the defendant, dated May 6, 1893, addressed to Mrs. Chauvet, one of the plaintiffs, as follows: "In consideration of your signing the agreement with me, dated the 4th day of March, 1893, I agree that you (with Abbott) will be paid and receive the sum of one hundred and eighty thousand dollars upon the distribution of the estate under the arrangement between the parties, together with the amount of counsel fees agreed on." Another agreement was made between Mrs. Chauvet and the defendant, which, after reciting the agreements and certain legacies to be paid to others, provides: "In other words, that said sum of $82,000 be a prior lien upon such third share, and first paid, and the undersigned, Margaret S. Ives, hereby guaranties the payment of the same, and of the amount coming to Mrs. Chauvet, $180,000." It further appeared that Mr. Calvin Frost, to whom the property was conveyed, proceeded with the execution of his trust; the defendant alleging in her answer "that said Calvin Frost, upon receipt of the same, divided such proceeds so received by him in accordance with said agreement." The court below dismissed the complaint upon the ground that the action was prematurely brought, the learned judge in his opinion saying that the meaning and intention of the parties "was that the sale and distribution of the estate should be proceeded with as proposed by Mr. Frost; that out of the proceeds of that sale the plaintiffs should receive, with the amounts realized by them or for their use out of the personal property, the sum of $180,000; and that if the estate should not realize enough

to make the amount coming to them, according to Mr. Frost's scheme of distribution, equal to $180,000, then the defendant was to pay and make up to them the deficiency. If this be the true construction of the agreement between the parties, it is evident that no liability arises on the part of the defendant until the distribution of the proceeds of the sale has been completed; for not until then will it be possible to ascertain the amount of the deficiency which she has agreed to pay. It appears from the evidence that the distribution has not yet been completed. Frost's executors have in their hands upward of $10,000, and they are also entitled, under a judgment of this court, to receive a considerable sum from the New York Life Insurance & Trust Company, * * * but the time has not arrived when the amount can be determined or its payment enforced." Upon the trial it was proved that the attorney for the plaintiffs called upon Mr. Calvin Frost in relation to the plaintiffs' claim; that Mr. Frost said that he had received the money as the proceeds of the sale of the property conveyed to him in pursuance of the agreement. Payment on behalf of the plaintiffs was then demanded, to which Mr. Frost replied that he would not pay unless Mrs. Ives directed him to do so, and that Mrs. Ives directed him not to pay. The plaintiffs having subsequently received from Mr. Frost $88,787.05, another demand on Mr. Frost was made for the balance due, which was refused. There was also evidence of a subsequent demand upon Mr. Frost, who said that he had no other money in his hands with which to pay.

The substantial question is whether, under these agreements, the obligation of the defendant was a mere collateral undertaking that the plaintiffs would receive upon the final settlement of Frost's accounts the sum of $180,000, or an original and absolute promise to pay $130,000 to Mrs. Chauvet in case she was unable to collect it from Mr. Frost. I am inclined to think that there was here an original promise, and that the plaintiffs were entitled to maintain the action. The original scheme proposed by Mr. Frost contemplated the conveyance of the interest of those becoming parties to it in the estate, and a distribution of the proceeds thereof, of which the plaintiffs would have a definite share. The plaintiffs agreed to become parties upon condition that they were to receive from such proceeds $180,000 net, and consented that Mrs. Ives should receive any surplus which under the agreement would come to them, upon the agreement that she should make up any deficiency, and that was agreed to by the defendant. The plaintiffs thus transferred to the defendant all their interest in the estate, or the right to receive from Frost the proceeds of the estate, except the sum of $180,000, and it was the intention of the parties, as evidenced by all their instruments, that; upon the distribution of the estate by Frost, the plaintiffs should receive the sum of $180,000, and that the defendant would make up any deficiency. If the share of the plaintiffs under the original scheme had exceeded $180,000, the defendant would have been entitled to the excess, but a deficiency would have to be made good by the defendant. Frost actually received the proceeds of the property that had been conveyed to him, and the amount of such proceeds that the plaintiffs have received is less than the amount they were entitled to receive

under the agreement. All that seems to have been paid by Frost to the plaintiffs is $88,787.05, and the demand upon Frost for the balance of the money was refused upon the ground that he had no money to pay the plaintiffs, and that the balance which he had in his hands was claimed by the defendant. As between the plaintiffs and the defendant, the plaintiffs were entitled to be paid this sum of $180,000 before the defendant was entitled to receive anything. Frost had received money sufficient to pay to the plaintiffs the amount coming to them. That money had been demanded from Frost, and he had refused to pay. An accounting by Frost was not, under these instruments, a condition of the plaintiffs' being entitled to receive the $180,000. When Frost received that money applicable to the payment of this sum due to the plaintiffs, they were entitled to receive it from him. It is not disputed that Frost received sufficient to pay the plaintiffs, and the admission in the answer of the defendant to which attention has been called, that the proceeds of the property were received by Frost, and that he had distributed the same, with proof that the plaintiffs had demanded the money from Frost, and had received from him all that he would pay them, was, I think, sufficient to justify the plaintiffs in maintaining an action to recover the balance which, under the agreement between the parties, the defendant agreed that the plaintiffs should receive. The fact that a small sum of money remains in Frost's hands for which he has not finally accounted is not material, as Frost has refused to make any further payment to the plaintiffs on account of the moneys that were coming to them.

I think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.