(62 App. Div. 339.)

### CHAUVET et al. v. IVES.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

INVALID WILL—HEIRS—SETTLEMENT—AGREEMENT—CONSTRUCTION.

Testator's will was invalid as to his real property, and his heirs agreed to a proposed settlement whereby the realty was conveyed to F. for sale. and agreed that, after paying certain legacies out of personal estate and proceeds of the realty, the residuum should be divided into thirds, out of one of which the plaintiffs should receive $180,000, and defendant the balance. Subsequently plaintiffs and defendant further agreed that certain legacies should be made a first lien on the $180,000, in consideration that defendant would guaranty the payment of that sum; and plaintiffs, after receiving $172,000 from the estate, sued defendant on the guaranty. Held, that the contention that the subsequent agreement referred only to the testator's realty, and that therefore defendant was not entitled to deduct from the $180,000 the amount received by plaintiffs as income from the testator's personal estate, could not be sus-

tained, since it was evident from the primary agreement that the parties intended to make a disposition of the whole estate, and that the $180,000 was to represent plaintiffs' entire interest therein.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Cordelia D. Chauvet and another against Margaret Seaman Ives. From a judgment in favor of plaintiffs, both parties appeal. Modified.

For former appeal, see 65 N. Y. Supp. 288.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Abram Kling, for plaintiffs.

Michael H. Cardozo, for defendant.

HATCH, J. The facts in this case are practically undisputed, as they rest almost wholly in documentary evidence, and relate to the estate of one Francis W. Lasak, deceased, who died on the 13th day of February, 1889, a resident of Westchester county, this state, seised and possessed of a large estate, consisting of real and personal property, and leaving a last will and several codicils, which were admitted to probate, and letters of administration with the will annexed were duly issued to the New York Life Insurance Company. In pursuance of the authority of these letters, the administrator took possession of the estate, and proceeded to administer upon it according to the provisions of the will. The heirs at law of Mr. Lasak were four children, of whom the plaintiff Cordelia D. Chauvet is one, and a deceased son's daughter, the defendant, Margaret Seaman Ives. Some of these heirs were dissatisfied with the will, and, notwithstanding the establishment thereof as a valid disposition of personal estate, various actions were instituted, with a view to invalidate it as a disposition of the testator's real estate. In December, 1891, a scheme was proposed to the heirs, in writing, for the distribution of the testator's estate, both real and personal, which was accepted and adopted by all the heirs at law, including Margaret Seaman Ives, Cordelia D. Chauvet, and Albert L. Chauvet, who is a son of Cordelia. This agreement was designed to, and did, terminate all litigation between the parties, so far as concerned the then existing controversies, and, after making provision for the payment of the specific cash legacies mentioned in the will and codicils, divided the remainder of the estate in a manner wholly different from that contemplated by the testator. With the consent of all the heirs, and for the purpose of carrying out the agreement for distribution, a judgment was obtained in an amicable action declaring the will invalid as a disposition of the real estate. Under the will and codicils, one-third of the residuary estate was given in trust for the plaintiff Cordelia D. Chauvet during her life, and at her death $50,000 of that trust fund was to go to her son Albert L., the plaintiff of that name, and the balance thereof was to be divided between certain charitable societies; and it was further provided that the bequest to Albert L. might, with his mother's consent, be paid to him before her death, out of the funds set apart

for her life use. The defendant was a legatee under the provisions of the will and codicils. The agreement as to distribution was based upon an estimated value of the entire estate, both real and personal, and provided for the payment to the defendant of $100,000, and to the plaintiff Mrs. Chauvet of $160,575, which, as we understand the computation shows, was to include the legacy of $50,000 to the plaintiff Albert L. Chauvet. The plaintiffs were not wholly satisfied with the amount coming to them under the proposed scheme of distribution, and agreed to it conditionally, by appending thereto the following, which was signed by them, viz.:

"We agree to above on condition that we receive $180,000, net, and that Mrs. Ives receive surplus, if any, under the will, and make up deficiency."

Mrs. Ives, the defendant, agreed to this condition; and there was also appended to the agreement the following, in writing, signed by her:

"I agree to modify the above agreement by accepting the conditions contained in above, signed by Mrs. Chauvet and Albert Chauvet.
                                                    "Margaret S. Ives."

In June, 1892, the parties to this action, and all other persons interested in the estate as legatees and heirs at law, except the trust company, the administrator with the will annexed, entered into a further agreement containing recitals not embraced in the earlier agreement of distribution, but substantially following the earlier, and especially so far as concerns the shares and relations of the parties to the present action. This agreement provided, among other things, that all the heirs, except Ophelia J. Cuthbert, a daughter of testator, should convey to one Calvin Frost, by a deed contemporaneously executed and delivered, all their right, title, and interest as devisees, heirs, or otherwise, in and to the real property of deceased; that his will and codicils, so far as either related to the real estate, should be judicially declared null and void in an action to be brought for that purpose; that the real estate should be sold in partition or otherwise; and that one-fifth of the proceeds should be paid to Ophelia J. Cuthbert, and four-fifths to Calvin Frost, and, out of the share of the proceeds thus paid to him, Frost was to pay to the administrator with the will annexed such sum, if any, as might be required, in addition to the proceeds of the personal estate, to pay the various money bequests, including $50,000 to the plaintiff Albert L. Chauvet; and the balance of the proceeds of the real estate to be received by Frost was to be divided into thirds, one of which, with certain deductions, was to be paid to Ophelia J. Cuthbert, and one, with certain other deductions, to Victoria A. McKenzie. As to the remaining one-third, it was agreed that $130,000 should be paid to Cordelia D. Chauvet, and that various other specified payments should be made, after which the agreement proceeds as follows:

"And the balance of said one-third share to Mrs. Margaret Seaman Ives; and, if the said last-mentioned one-third share shall be insufficient to pay the said sum of $130,000 to Mrs. Cordelia D. Chauvet, any deficiency therein shall be made up by Mrs. Margaret Seaman Ives, to whom, it is agreed, shall belong and be paid and delivered any and all payments, property, and moneys

which, excepting for this agreement, might belong, be paid, or delivered to Mrs. Cordelia D. Chauvet and Albert L. Chauvet, or either of them, directly or contingently, out of the estate left by said Francis W. Lasak, deceased."

This agreement was duly executed by all the heirs and legatees, including the parties to this action; and on the same day, and in pursuance thereof, all the heirs of Lasak, except Mr. Cuthbert, executed and delivered to Mr. Frost a conveyance of their respective interests in the real estate. On the same day the parties to this action executed a further agreement wherein they recited the first agreement made by all the Lasak heirs and legatees, and the plaintiffs ratified and confirmed to the defendant, as well, the conveyance and release of the rights, claims, and demands which they, or either of them, had or might have to the assets, real and personal, belonging to the estate; and the defendant, on her part, ratified and confirmed to the plaintiffs the promises of the payments to be made to them, respectively, and further agreed that:

"If, upon a sale and conversion into money of the said estate, real and personal, * * * said estate upon such sale and conversion into money realizes and produces more than the sum of twelve hundred thousand dollars, that she, Mrs. Ives, will, upon the receipt by her of the sums to which she is entitled under said agreement, and out of the same pay to Mrs. Chauvet a sum equal to ten per cent. of the sum in excess of twelve hundred thousand dollars produced and realized upon the sale and conversion into money of the said estate."

It is urged that the part of the agreement quoted is significant, in view of the fact that the agreement for distribution was based upon an assumed valuation of the estate at $1,100,000.

On June 20, 1892, the plaintiff Cordelia D. Chauvet and the defendant entered into a further agreement respecting the legacies to be paid to the two charitable societies, by which it was agreed that these legacies should be paid out of the one-third out of which Mrs. Chauvet was to be paid $130,000, and then provided as follows:

"In other words, that said sum of $82,000 be a prior lien upon such third share, and first paid; and the undersigned, Margaret S. Ives, hereby guaranties the payment of the same, and of the amount coming to Mrs. Chauvet,— $180,000."

The words last above quoted are claimed to have corrected a variance from the original scheme, and charge Mrs. Ives' third with the legacy of $50,000 to the plaintiff Albert L. Chauvet, as well as Mrs. Chauvet's $130,000, thus making the sum of $180,000; the general scheme having provided that the legacy to Albert L. should be included in the share allotted to Mrs. Chauvet. The action was brought to recover from Mrs. Ives the said sum of $180,000, which it averred the defendant agreed to pay, and guarantied the payment of, from the proceeds of the estate, with interest. The answer denies that the defendant agreed to pay to the plaintiffs the said sum of $180,000, or any part thereof, and denies that no part of such sum has been paid to the plaintiffs. Upon the trial the controversy resolved itself into the question of how much of the sum sued for had been received by and paid to the plaintiffs; it being contended by the defendant that the aggregate of all amounts which the plaintiffs have received, either directly or indirectly, by having the same

received and held in trust for them, should be applied as payment, and deducted from the $180,000; while on behalf of the plaintiffs it is maintained that only sums received after the date of the agreement of June 16, 1892, and only such sums as were received directly by the plaintiffs, and not sums received indirectly for their benefit by the trust company, should be deducted. The trial court found and decided that the defendant is not entitled to deduct from the sum agreed by her to be paid to Cordelia Chauvet moneys paid to her as income from the personal estate by the administrator with the will annexed, and rendered judgment for the plaintiffs in the sum of $21,199.38, with interest and costs and an extra allowance; and from the judgment so entered this appeal is taken by both parties.

We think the learned trial court has fallen into error in his construction of the agreement. An examination of his opinion and the findings based upon the evidence in the case clearly shows that he regarded the agreement as not affecting the plaintiffs' interest in the personal estate, but that it only related to and covered the real property and the proceeds of the same. This conclusion proceeded upon the theory that, as the will was a valid instrument so far as the bequests of the personal estate were concerned, therefore it remained and continued to be controlling, irrespective of the agreements, and that, as the plaintiffs took thereunder, income from that source was the property of the plaintiffs, and that the same could not be deducted from the aggregate amount which the defendant had guarantied should be received, but was in fact in excess of such sum. We are of opinion that such construction of the agreements of the parties is not correct. It is plainly evident from the terms of the agreement that the parties thereto interested in the estate intended to make disposition of the whole thereof, personal as well as real, and that the $180,000 agreed to be paid to the plaintiffs represented the entire sum which they should receive for their interest in the entire estate. While it is true that the will was valid and effectual in the disposition of the personal property of the estate, yet it is equally true that, in view of its invalidity as to the real property attempted to be devised thereby, the disposition of which became the subject of controversy, it was entirely competent for the parties to take the amount of the personal property into consideration, and the rights of the parties therein, for the purpose of determining how much each should receive from the entire estate. This was rendered absolutely necessary in order to determine the rights of the parties, and the sum each was equitably entitled to receive. Such is the plain and unmistakable provision of the agreements in their entirety, and it is under the agreements, and not under the will, that the plaintiffs have present rights to maintain this action. Such was the construction placed upon the primary instrument when it was before this court for construction in Trust Co. v. Cuthbert, 31 App. Div. 191, 52 N. Y. Supp. 653. This construction was ratified by the court of appeals, it adopting the opinion of this court in that case. 160 N. Y. 705, 55 N. E. 1098. While it is true that only the agreement of June 16th was then before the court, it is equally true that it was the primary instrument, and clearly shows the intention

of the parties thereto in the proposed settlement and division of the estate; and the language therein used is as applicable to the subsequent agreement as to the primary one. They all relate to the same subject-matter, and have controlling force in the construction of all of the agreements. The fact that in that case the court declined to determine the respective rights of the parties to the present action in respect of the interest of each in the rents does not at all detract from the force of the reasoning as to the proper construction of the agreement between these parties. It necessarily follows that, if the construction adopted by the court was correct, it is conclusive upon the rights of the parties herein. Such question was not determined in that action, for the reason that these parties were not then before the court, and their rights were not essential to a proper disposition of the case. The same result was also reached by this court upon the former appeal in this case, Chauvet v. Ives, 52 App. Div. 411, 65 N. Y. Supp. 288.

It follows, therefore, that the learned court was wrong in making distinction between the sums received as income from the personal property and that received from the real property of the estate. The plaintiffs are equally chargeable for both. So far as is disclosed by the opinion, it was the evident intention of the court to charge the whole of the sums received from the latter source against the sum which was to be paid to the plaintiffs. In the findings of fact the court has been careful to separate the items received as income from the personalty and from the real property, and this for the evident purpose of plainly showing the sums which he allowed and those which he disallowed. Through inadvertence, however, he has omitted to charge against the plaintiffs the sum of $6,747.50 received by the New York Life Insurance & Trust Company since June 16, 1892. This sum proceeded from the realty, and only by mistake was it omitted to be deducted from the sum which the plaintiffs were entitled to receive in accordance with the court's decision. As we understand the decision of the trial court, it decided that the plaintiffs should be charged with, and there should be deducted from the sum of $180,000, all sums received by them, either directly or indirectly, from the estate of the deceased, except moneys paid to the plaintiff Cordelia D. Chauvet as income from the personal estate by the New York Life Insurance & Trust Company. That such was the decision is apparently perfectly clear. The sum received as income from personalty, as found by the court, is $6,822.99, as printed in the record. An examination of the items proved shows, however, that the correct sum is $6,812.99, and therefore an error of $10 was made either by the court or the printer. It further appears from the evidence that there has been paid to or received by the trustee for the benefit of the plaintiffs, for principal, income, rents, and profits, from all sources, the sum of $172,461.11; and the court states in its opinion the aggregate of the sums to be deducted as the sum of $158,900.52, which sum, as there stated, is made up of $89,927.94 of principal received by Cordelia D. Chauvet directly; sums received by the trustee from principal, $46,907.68; and income from real estate, $22,065. Now, by taking the sum of these items,

viz. $158,900.52, from $180,000, there remains $21,099.38, so that, based on these figures, the recovery should have been the latter sum. The recovery allowed is in fact the sum of $21,199.38. These figures demonstrate two things: First, they show an error of $100 in favor of the plaintiffs; and, second, they clearly show that neither the $6,747.50 received by the trustee since June 16, 1892, which the court intended to allow, nor the item of $6,812.99 received from income of the personalty, could have been included in the amount charged against the plaintiffs, although, as shown, the former item was intended to be. It may be demonstrated in another way that neither of these items was deducted, viz.: As already stated, it appears that the total of the sums received by and for the plaintiffs is $172,461.11, and the sum of the two items mentioned, to wit, $13,560.49, added to the $158,900.62 which the decision deducts from the $180,000, just equals the grand total of $172,461.11. It therefore appears that the judgment should be modified by reducing the recovery to the sum of $7,538.89, and the interest and extra allowance proportionately.

The parties upon appeal having asked that the court direct such judgment as it concludes ought to be entered, without ordering a new trial, the judgment appealed from should be modified in accordance with this opinion, with costs to the defendant, appellant. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I do not agree that the income from the personal property should be charged to the plaintiffs. As I understand it, this was the interest upon the trust fund, the income of which was to be paid by the trustee to the plaintiffs, and it was paid as the income of the property after it was received by the trustee and held in trust for the plaintiffs. I do not agree that the referee omitted to charge plaintiffs with the sum of $6,747.56. As I understand the referee's report, the items paid to the plaintiffs are reported separately, but subsequently they are included in one finding, the total amount of which is charged to the plaintiffs. The modification, as I understand it, charges the plaintiffs with this amount of $6,747.56 twice. I therefore dissent from the opinion of the court charging plaintiffs with these sums.