CORDELIA D. CHAUVET et al., Appellants and Respondents, *v.* MARGARET SEAMAN IVES, Respondent and Appellant.

1. DEVISEES — COMPROMISE AGREEMENT — CREDIT OF PAYMENTS. Devisees under a will valid as to personal property, but void as to real estate, may, if competent to contract, agree between themselves how much in the aggregate each shall receive from the entire estate, and all payments made thereunder to each of them from the property, whether real or personal, including income from the personalty or rents from the realty, should be credited upon the sum which they agreed to accept in full.

2. HEIRS — AGREEMENT — CONSTRUCTION. An heir who, by agreement with another, is to receive any surplus of the latter's share over a given sum and is to make up any deficiency if it falls below it, and who further guarantees the payment of such amount upon the distribution of the estate, simply undertakes to make up to the other any portion of the designated sum that may not be realized from the proceeds of the estate.

3. INTEREST. One heir, who, by a compromise agreement, undertakes to make up to another any deficiency if the latter's distributive share is less than a specified amount, is not chargeable with interest in the absence of an agreement therefor, until the distribution of the estate is completed and the deficiency is ascertained and payable.

*Chauvet* v. *Ives*, 62 App. Div. 339, affirmed.

(Argued December 11, 1902; decided January 6, 1903.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 27, 1901, modifying, and affirming as modified, a judgment in favor of plaintiffs entered upon a decision of the court at a Trial Term without a jury.

It was alleged in the complaint that in consideration of the transfer by the plaintiffs to the defendant of all their rights, claims and demands to the estate, real and personal, of which the late Francis W. Lasak died seized, the defendant promised to " pay to the said plaintiffs the sum of $180,000, and " to " guarantee the payment to said plaintiffs from the proceeds of said estate the said sum as above mentioned ; " that defendant had neglected and refused to pay the sum mentioned. Judgment was thereupon demanded for that amount with interest from the date of the agreement. The trial court rendered judgment in favor of the plaintiffs for $27,147.21, besides costs. The Appellate Division reduced the recovery to the sum of $9,652.29, besides costs, by deducting certain distinct items, and as thus modified, the judgment was affirmed. Both parties appealed to this court. The further material facts are stated in the opinion.

*Stillman F. Kneeland* and *Charles C. Thorne* for plaintiffs, appellants and respondents. The plaintiff was improperly charged with the sums of money received by her after June 16, 1892, and designated as rents or income from the real estate. (*Texier* v. *Gouin,* 5 Duer, 389 ; *Dickinson* v. *Devlin,* 14 J. & S. 232 ; *Potter* v. *Gates,* 29 N. Y. S. R. 662 ; *Hall* v. *Olney,* 65 Barb. 27.) The defendant is liable for interest from the date of the agreement and transfers. ( *Woerz* v. *Schumacher,* 37 App. Div. 374 ; *Purdy* v. *Phillips,* 11 N. Y. 406 ; *Farquhar* v. *Morris,* 7 T. R. 124 ; *Chester* v. *Jumel,* 125 N. Y. 237 ; *Gillet* v. *Van Rensselaer,* 15 N. Y. 397 ; *Stevenson* v. *Maxwell,* 2 N. Y. 408 ; *Viele* v. *T. & B. R. R. Co.,* 21 Barb. 381 ; *Cleveland* v. *Burrill,* 25 Barb. 532.)

13

*Michael H. Cardozo, Henry W. Bookstaver* and *Algernon S. Norton* for respondents. The decision in the *Cuthbert* case is controlling and establishes the law of this case. (*N. Y. L. Ins. Co.* v. *Cuthbert,* 31 App. Div. 191.) The undertaking of the defendant was to make good a deficiency, not to pay a particular sum, and until such deficiency was ascertained and fixed no claim existed against her. (*Nicoll* v. *Sands,* 131 N. Y. 19 ; *Ins. Co.* v. *Dutcher,* 95 U. S. 269 ; *Cuthbert* v. *N. Y. L. Ins. Co.,* 160 N. Y. 705.)

VANN, J. By a will and seven codicils Francis W. Lasak, a resident of Westchester county, attempted to dispose of a large estate consisting of both real and personal property. Upon his death in 1889 litigation arose over his will and finally several agreements were entered into by those interested which provided for the distribution, through voluntary action and without resort to the courts, of the entire estate, real and personal, and the settlement of all controversies then existing between the parties.

This compromise seems to have caused more litigation than it aimed to prevent. (*New York Life Insurance and Trust Co.* v. *Cuthbert,* 31 App. Div. 191; affirmed on opinion below, 160 N. Y. 705 ; *Chauvet* v. *Ives,* 52 App. Div. 411 ; *S. C.,* 62 App. Div. 339.) Both parties now come before us as appellants, and we sympathize with their desire that our decision should finally end the dissension created by their efforts to compose their differences and prevent litigation.

According to the will and the various codicils one-third of the residuary estate was left in trust for the plaintiff Cordelia during her life, and upon her death $50,000 of this trust fund was given to the plaintiff Albert, her son, and the balance to charity, with the proviso that Albert, with the consent of his mother, might be paid his legacy before her death. This consent was afterwards given in due form.

By the first agreement, dated December 3d, 1891, the estate was estimated, " as a basis of settlement," to be of the value of $1,100,000, consisting of $250,000 in personal and $850,000

CHAUVET *v.* IVES. **195**

N. Y. Rep.] · Opinion of the Court, per VANN, J.

in real property. As at first proposed and as signed by all parties in interest except the plaintiffs, it made a division of the entire estate, terminated all suits then pending and among other things provided for the payment of $100,000 to the defendant and $160,575 to the plaintiff Cordelia, including the bequest to the plaintiff Albert. Before signing it, however, the plaintiffs added thereto the following : " We agree to above on condition that we receive $180,000 net, and that Mrs. Ives receive surplus, if any, under the will, and make up deficiency." The plaintiffs signed the agreement as thus amended, and thereupon the defendant assented thereto by signing the following statement written directly beneath their signatures : "I agree to modify the above agreement by accepting the conditions contained in above, signed by Mrs. Chauvet and Albert Chauvet." Each party agreed to execute such conveyances as were reasonably necessary to carry out the plan, and this was subsequently done.

A second agreement was entered into on the 16th of June, 1892, which provided, at great length, the method of distribution. The will, as already admitted to probate by the surrogate, was to stand so far the personal property was concerned, but was to be adjudged void by a proper decree as to the real estate. Many provisions were made which we will not repeat. It is sufficient to state that the real property was to be conveyed to Calvin Frost, who had proposed the scheme of settlement, and sold in partition or otherwise. One-fifth of the proceeds was to be paid to Mrs. Cuthbert, a daughter of the decedent, and four-fifths to Mr. Frost, out of which he .was to pay to the administrator with the will annexed an amount sufficient with the proceeds of the personal property to meet the pecuniary legacies, including $50,000 to the plaintiff Albert. The remainder was to be divided into thirds, one of which, after certain deductions, was to be paid by Mr. Frost to Mrs. Cuthbert, and another third, after certain deductions, to Mrs. McKenzie. Out of the remaining third he was to make various payments, including $130,000 to the plaintiff Cordelia, "and the balance of said one-third share to " the defendant.

The agreement then provided as follows: "If the last mentioned one-third share shall be insufficient to pay the said sum of $130,000 to Cordelia D. Chauvet, the deficiency therein shall be made up by Mrs. Margaret Seaman Ives, to whom, it is agreed, shall belong and be paid and delivered, any and all payments, property and moneys which, excepting for this agreement, might belong, be paid or delivered to Mrs. Cordelia D. Chauvet and Albert L. Chauvet, or either of them, directly or contingently, out or from the estate left by said Francis W. Lasak, deceased."

On the same day the heirs conveyed to Mr. Frost as agreed. On the same day also a third agreement was made by which, after referring to the second, and reciting that the plaintiffs had thereby released, conveyed and sold to the defendant all their rights to the estate, real and personal, left by Mr. Lasak ".and the proceeds, upon the condition expressed in said agreement that there be paid out of the proceeds of said estate a bequest of $50,000 to Mr. Chauvet and the sum of $130,000 to Mrs. Chauvet," the plaintiffs ratified and confirmed the transfer to the defendant of "all and singular the rights, claims and demands which they have or either of them has or may have to or in the estate, real and personal, which was of the late Mr. Francis W. Lasak, deceased, or any part thereof and the proceeds thereof."

The agreement closed with the following paragraph: "Mrs. Ives ratifies and confirms to Mrs. Chauvet and to Mr. Chauvet the promises of the payments to be made to them respectively, as provided in said agreement, and Mrs. Ives further agrees that if, upon the sale and conversion into money of the said estate, real and personal, which was of the late Mr. F. W. Lasak, deceased, said estate upon such sale and conversion into money realizes and produces more than the sum of $1,200,000, that she, Mrs. Ives, will, upon the receipt by her of the sums to which she is entitled under said agreement and out of the same, pay over to Mrs. Chauvet a sum equal to ten per cent of the sum in excess of $1,200,000 produced and realized upon the sale and conversion into money of said estate."

On the 20th of June, 1892, a fourth agreement followed, which provided that the sum of $82,000, which by the agreement of June 16th was to be paid to two charitable societies out of the last third already alluded to, should be a prior lien upon the $130,000 payable to Mrs. Chauvet "and first paid, and the undersigned, Margaret S. Ives, hereby guarantees the payment of the same, and of the amount coming to Mrs. Chauvet, $180,000."

On the 6th of May, 1893, the fifth agreement was made in the form of a letter addressed to Mrs. Chauvet and signed by the defendant, declaring that "in consideration of your signing the agreement with me, dated the 4th day of March, 1893, I agree that you (with Albert) will be paid and receive the sum of $180,000 upon the distribution of the estate under the arrangement between the parties, together with the amount of counsel fees agreed on.". No agreement of March 4th appears in the record, but an agreement, dated March 3rd, 1893, signed by the defendant, was read in evidence. Its provisions are not regarded as important on this appeal. The New York Life Insurance and Trust Company, as administrator with the will annexed, refused to sign any of the agreements.

This action was brought by Mrs. Chauvet and her son, as plaintiffs, to recover said sum of $180,000, with interest thereon from the 16th of June, 1892. Various payments have been made to the plaintiffs, both directly and in trust for them, but they claim that no part thereof should be credited except those made directly to them after June 16th, 1892, the date of the second agreement, and that they should receive interest from that date. Upon the theory that the will was valid as to the personal property, the trial court, owing to his construction of a previous decision of the Appellate Division, held that the income received by the plaintiffs therefrom was their property and should not be applied upon the principal sum of $180,000, although he held that all other sums received by them, whether from real or personal property, or before or after the agreements, should be thus

applied. The defendant claims that this was erroneous as to the income from the personal property, and the plaintiffs claim that it was erroneous as to the rents from the real property. The Appellate Division held that the parties "interested in the estate intended to make disposition of the whole thereof, personal as well as real; and that the $180,000 agreed to be paid to the plaintiffs represented the entire sum which they should receive for their interest in the entire estate."

We agree with the Appellate Division. The fact that the will was valid as to personal property did not prevent the parties, all of whom were competent to contract, from agreeing as between themselves how much in the aggregate each should receive from the entire estate, both real and personal. As all the agreements relate to the same subject, they should be read together, and when thus read they show a clear and unmistakable intent to dispose of all the property left by the decedent, and that the plaintiffs' share thereof should be the net sum of $180,000. The defendant was to take what was left of the share which, but for the agreements, would have gone to the plaintiffs, and in consideration thereof she was to guarantee to them the sum agreed upon. She was, according to the first agreement, to "receive surplus, if any, under the will, and make up deficiency." That is, if the share of the plaintiffs in both real and personal, provided no agreement had been made, would have exceeded $180,000, the defendant was to have the surplus, and if it fell below that sum, she was to make it up. The distinct mention of the will excludes the theory that the plaintiffs could receive anything under it, unless it was credited upon the amount they agreed to accept in full and which they required the defendant to guarantee should be paid. The deficiency is again referred to, in terms, in the second agreement, which provides that the defendant is entitled to "any and all payments, property and moneys which, excepting for this agreement, might belong" to the plaintiffs, "or either of them, directly or contingently, out or from the estate left by said Francis W. Lasak, deceased." The third agreement ratified and confirmed the previous

transfer by the plaintiffs to the defendant of all their rights, joint and several, to the estate, " real and personal, which was of the late Mr. Francis W. Lasak, deceased, or any part thereof and the proceeds thereof, upon the condition that the plaintiffs be paid out of the proceeds of said estate " the sum of $180,000. The defendant also ratified her previous promises to the plaintiffs and agreed that if the entire estate, including real and personal property, when converted into money, amounted to more than $1,200,000, the defendant should, upon the receipt by her of the sums to which she was entitled under the agreement, pay over to the plaintiff Cordelia a certain percentage of the excess. A latitude of $100,000 above the estimate " as a basis of settlement " mentioned in the first agreement, was thus allowed before any liability for the percentage arose. The fourth and fifth agreements emphasize the fact that from all sources the plaintiffs were to receive but $180,000 in full of their shares in all the property left by their ancestor. Mrs. Chauvet seems to have had one leading idea in her mind throughout all the negotiations and in making all the agreements, and that was that she and her son should in any event receive the net amount of $180,000, and that all that remained of what they would otherwise have been entitled to receive under the will, as heirs at law, next of kin, or through the agreements, was to go to the defendant. All payments, therefore, at any time made to the plaintiffs, or for their benefit with their consent, from the property left by the decedent, whether real or personal, " or any part thereof and the proceeds thereof," including income from the personal and rents from the real, should be credited upon the sum which they agreed to accept in full of their claims of every kind.

This conclusion accords with our construction of the first agreement when we considered it in the *Cuthbert Case* (31 App. Div. 191; 160 N. Y. 705). While the later agreements were not then before us, they confirm and emphasize the intention expressed by the parties in their first attempt to avoid litigation. The scheme of distribution and settlement

provided for by the first agreement was worked out and carried into effect by those subsequently made. The modifications relate to details and do not affect the principle upon which our former judgment was based.

The plaintiffs claim interest from various dates; in their complaint, from June 16th, 1892, the date of the second and third agreements, and in their points from that date as well as from July 1st, 1894, the date when, as the court found, Mr. Frost received "a sum exceeding $180,000" from the estate of Mr. Lasak; from November 22d, 1894, when it was asserted but neither found nor proved, Mr. Frost distributed the fund, and from December 1st, 1894, when, as was found, the plaintiffs demanded payment of him. The defendant claims her undertaking was not to pay a definite sum, but to make good a deficiency, and that until such deficiency is ascertained by an accounting with Frost or his executors, there can be no recovery of either principal or interest. :

The trial court found that "it does not appear that the entire estate * * * has ever been accounted for or distributed," or "that the plaintiffs, or either of them * * * ever demanded of the defendant the payment of the moneys sued for in this action, or any part thereof." No mention of interest is made in any of the agreements. There is no evidence that the defendant caused any delay in the distribution of the estate, or that when demand was made of Mr. Frost he had enough money on hand, applicable to the plaintiffs' claim, to satisfy it. While he had $180,000 on hand, less than one-third thereof could, according to the agreements, be applied upon the demand of the plaintiffs. ,

The nature of the defendant's promise is not free from difficulty. The plaintiffs seem to have been in doubt when they commenced the action, for in the same sentence of their complaint they allege an absolute promise and a guaranty of payment from the proceeds of the estate. By the first agreement the defendant was to receive the "surplus," if any, "and make up (the) deficiency." The second provides that any "deficiency" remaining after Mr. Frost should make distri-

bution, should be " made up " by the defendant. The third recites as the condition upon which the plaintiffs had transferred their rights to the defendant " that there be paid out of the proceeds of said estate a bequest of $50,000 to Mr. Chauvet and the sum of $130,000 to Mrs. Chauvet." By the same agreement the defendant also confirmed to the plaintiffs the promises made to them in the second. By the fourth, the defendant, in terms, " guarantees the payment  *  *  *  of the amount coming to Mrs. Chauvet, $180,000." In the fifth the defendant promises that the plaintiffs should " be paid and receive the sum of $180,000 upon the distribution of the estate under the arrangement between the parties."

While the promise of the defendant was not collateral in the ordinary sense of that word as used with reference to the Statute of Frauds, it impresses us as collateral in nature and substance. It was not primarily for the default of an individual, although it necessarily extended to any default of Mr. Frost, but it was to make up what the estate did not pay of the sum named. If there was a failure of the estate to pay in full the defendant agreed to guarantee the payment of the deficiency. The use of the words " guarantee," " make up," " surplus " and " deficiency," and of the expressions " upon the distribution of the estate," " from the proceeds of the estate " and the like, are significant.

It seems strange at first that the plaintiffs should be charged with rents and income and yet interest should be withheld from them, but they preferred a certainty to an uncertainty, to accept the sum of $180,000 in any event rather than take the chances that their estimated share, which was but $160,575, should turn out better than was expected, and they would not sign the agreement until it was amended accordingly. Under these circumstances the omission of the promise to pay interest in a compromise agreement has some bearing upon the intention. While it is true that from certain parts of the instrument, considered by themselves, the transfer of their rights by the plaintiffs to the defendant seems absolute, entire and *in præsenti*, we think that upon reading all the agree-

ments together the more reasonable construction is that the intention was to transfer what was left of the plaintiffs' share after the payment therefrom of the $180,000, and that if a deficiency then arose the defendant was to make it up. She did not promise to pay that large sum immediately, or at any particular time, or unconditionally, but only so much thereof as the estate did not pay. Clearly she could not have been sued the day after the agreements, or any of them, were made, for nothing was then due. When did anything in fact become due? She was not to pay a lump sum at once, but to make up a deficiency, if one arose, after the estate had been distributed. She could not make up the deficiency until she knew what it was. So far as appears she had no means of paying except as the estate was distributed, and the scheme of distribution required time, for there was much real estate to be sold "in partition or otherwise." Her liability was not founded upon a mercantile instrument, but upon a compromise agreement, made between the heirs of an estate in order to prevent litigation. As she did not agree to pay interest, she was not liable for interest until the obligation was due, nor until she could ascertain by computation, or otherwise, the amount that she was to pay. How could she tell whether there would be any deficiency, or the amount thereof if there was one, until after Mr. Frost had accounted? Until he made his division, her obligation was unliquidated. The plaintiffs were certainly entitled to share in the distribution to be made by him. They did not transfer to the defendant all their rights in the large fund in his hands, but only to the surplus, if any, after they had been paid the amount which they agreed to accept. They did not sell their share of the proceeds of the estate, but only what was left after they had been paid in full. They reserved the right to receive from Mr. Frost $180,000, or whatever their proportion amounted to, and to require him to account therefor. They could not tell how much the defendant was liable for, nor could she know how much she would be obliged to pay until the estate was distributed, because the amount of the deficiency, if any

should arise, could not be sooner known. The intention of the parties was well expressed by the learned trial judge when he said : " It was that the sale and distribution of the estate should be proceeded with as proposed by Mr. Frost ; that out of the proceeds of that sale the plaintiffs should receive, with the amounts realized by them or for their use out of the personal property, the sum of $180,000, and that if the estate should not realize enough to make the amount coming to them, according to Mr. Frost's scheme of distribution, equal to $180,000, then the defendant was to pay and make up to them the deficiency."

Without prolonging the discussion and after examining all the points presented by the plaintiffs, we announce as our conclusion that they have been awarded all of principal or interest that they are entitled to recover. This makes it unnecessary to consider the question raised by the defendant's appeal, whether the action was prematurely brought, since, in order to end the litigation, she consented on the argument that if the appeal of the plaintiffs was not sustained, her own appeal might be disregarded.

The judgment should be affirmed, but as both parties appealed, without costs to either in this court.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT and CULLEN, JJ., concur ; BARTLETT, J., not voting.

Judgment affirmed.