In the Matter of the Probate of the Will of ANNIE R. TINKER,
Deceased, and Proceedings to Secure the Court's Approval to
an Agreement of Compromise.

Surrogate's Court, Suffolk County, April 6, 1925.

**Wills — contested probate — proceeding for probate of will and for
approval of compromise agreement between litigants — Surrogate's
Court has jurisdiction of proceeding under Personal Property Law,
§ 24, Real Property Law, § 73, and Surrogate's Court Act, § 40 — com-
promise agreement between litigants different from provisions of will
is valid and binding upon principal beneficiary under will — will
admitted to probate, though void under laws of this State at time
of execution.**

A compromise agreement entered into between the members of decedent's family
and other parties in interest, including the principal beneficiary of her estate,
to bring about the settlement of a controversy and to procure the probate of
decedent's will, which provided for the creation of a charity to meet the
intention of the deceased, as expressed in her will, is valid and binding upon
all parties, though its terms be different from the provisions of the will, where
the said agreement was honestly and fairly entered into and there was nothing
to indicate that any party was induced to execute it through misrepresentation
or fraud.

The Surrogate's Court has jurisdiction of the proceeding for the approval of the
compromise agreement and the probate of the will under section 24 of the
Personal Property Law, section 73 of the Real Property Law, and section 40
of the Surrogate's Court Act.

The designation in the agreement by the chief beneficiary of the charity provided
for in the will was a valid exercise of the power of appointment under the
provisions of the will, and, in the absence of fraud, the Surrogate's Court
will not interfere with her act. The fact that the donee or a third person may
directly or indirectly be benefited through the exercise of a power does not
invalidate the appointment as fraudulent where such benefit is not a cause
inducing the donee to exercise the power.

Decedent's will should be admitted to probate, upon the agreement between the
parties, though it be a holographic instrument, made in Italy without attesting
witnesses, and at the time of its execution was void under the laws of this
State.

PROCEEDING for probate of will and to obtain approval of court
to an agreement of compromise.

*Martin W. Littleton* [*Myles A. Walsh* of counsel], for the petitioner
Louise Larocque Arnold.

*Guthrie, Jerome, Rand & Kresel* [*William D. Guthrie, William
Rand* and *Harland B. Tibbetts* of counsel], for the respondent Kate
Darling Nelson Bertolini.

*Shearman & Sterling [Abel E. Blackmar, James A. Stevenson, Jr., and Nathan O. Petty* of counsel], for the petitioner William W. Lancaster.

*Moore, Hall, Swan & Cunningham [William A. Moore* of counsel], for Annie R. Tinker Memorial Home.

*Robert P. Griffing [William H. P. Oliver* of counsel], for Edward L. Tinker.

PELLETREAU, S.:

Annie R. Tinker, the deceased, a resident of the county of Suffolk, died February 21, 1924, at London, Eng. She left a holographic will without attesting witnesses. It appeared to have been made in Naples, Italy, July 27, 1918.

At the time of its execution it was void under section 23 of the Decedent Estate Law as it then read. On May 3, 1919, after the making of said will, and before the death of the said Annie R. Tinker, the Legislature added section 22-a and amended section 23, under the provisions of which a holographic will without witnesses executed without the State, could be probated in this State provided such will could be probated under the laws of the place where it was executed (Laws of 1919, chap. 294.)

The question at once arose whether the act of May 3, 1919, was or was not retroactive. It ought to have been, though the sections referred to contain no such provision. Such a will as the one in question could be probated under the laws of Italy, but the decedent was a resident of the State of New York.

Miss Tinker did not recognize any member of her family in making her will. The property was hers and she could do with it as she pleased. Complications arose, however, by reason of the fact that the will was executed in a foreign country, was a holographic will without witnesses, that the Tinker family were not remembered, that the benefits passed to a so-called charity of some uncertainty and to a stranger to her blood.

A compromise agreement was entered into dated May 30, 1924, with the view to bring about a settlement of the situation and procure the probate of the will. Thereafter, and on the 24th day of September, 1924, an agreement was entered into providing for the creation of a charity to meet the desire of the deceased, as expressed in her will, and providing for its endowment. Mr. W. W. Lancaster had been friend, attorney and man of business of the deceased for years prior to her death, and had much to do with the said agreements. Mrs. Kate Darling Bertolini, a principal beneficiary under the said will, was a party to said agreements. So far as she was concerned, her interest in entering into said

agreements could only have been to secure the probate of the will. If the will was probated, she would be benefited; if not probated, she would receive nothing. Mr. W. W. Lancaster was her attorney. Mrs. Bertolini had been an intimate friend of Annie R. Tinker, and knew that Mr. Lancaster had been her attorney and of their extensive and long-continued business relations.

On the 31st day of October, 1924, Mrs. Kate Darling Bertolini, formerly Kate Darling Nelson, rescinded, or attempted to rescind, the agreement of compromise of May 30, 1924, and, about the same time, revoked her power of attorney to Mr. Lancaster, and retained new counsel. The reasons for her said rescission, in effect, were that said agreement was not legally binding upon her, that she had been deceived in its execution, unprotected by independent legal advice, that it was not a free acted deed, and was not enforcible because not executed by Edward R. Tinker, an heir at law of the deceased.

The various proceedings were consolidated, proofs taken and hearings had. While the estate is a very large one, and the controversies both complicated and unusual, I cannot see that there are any new questions of law involved.

The agreement of May 30, 1924, I believe was honestly and fairly entered into, that Mrs. Bertolini was quite capable of taking care of herself, was not deceived, the facts were not misrepresented to her, *and it settled a controversy.* It was a question whether or not the will could be probated. She was vitally interested, as, if the will be not probated, she would receive nothing. The said agreement was afterwards approved and confirmed by Edward R. Tinker. The agreement made some provision for Mr. Lancaster. Considering the evidence and what was brought out in some of the letters and exhibits in evidence and the testimony, I rather think he earned all he got or is likely to get. At any rate, the testimony shows that Annie R. Tinker, in her lifetime, recognized the value of his services and the insufficiency of his compensation. Likewise, both the family of the deceased and Mrs. Bertolini recognized a just indebtedness to Mr. Lancaster, and it was expressed in the agreement.

The parties in interest attempted to compose their difficulties by the agreement above referred to. There certainly was a consideration moving to Mrs. Bertolini in making the agreement of compromise. It avoided and settled a legal contest.

Whether or not the will could be legally probated if it were contested is beside the question. That would be a question of law, in my opinion, determinable whether or not the amendment of May 3, 1919, was retroactive. The court has jurisdiction of this

proceeding under section 24 of the Personal Property Law (added by Laws of 1919, chap. 419), section 73 of the Real Property Law (added by Laws of 1919, chap. 441), and the general provisions of section 40 of the Surrogate's Court Act.

The claim is made that the designation of the Annie R. Tinker Memorial Home was not her free and unprejudiced act, and that her attempted exercise of discretion was fraudulent for the reason that, in effect, it conferred some benefits upon Mrs. Arnold, the mother, and Edward Tinker, the brother of the decedent, as well as upon Mr. Lancaster. I think that point is not well taken. It was the exercise of the power of appointment. The fact that the donee or a third person may directly or indirectly be benefited through the exercise of a power, does not invalidate the appointment as fraudulent where such benefit is not a cause inducing the donee to exercise the power, and the power would have been exercised without regard to such indirect benefit. The choice of the home was left entirely to the judgment of Mrs. Bertolini under the provisions of the will. She exercised that judgment in the agreement. If the exercise of her discretion of appointment was an honest one and not induced by fraud, I think the court should not interfere. After the said agreement of May 30, 1924, was made, it was accepted by all hands and acted upon. I think it is still binding upon Mrs. Bertolini.

I likewise approve, so far as I have the power so to do, of the agreement dated September 24, 1924, between Kate Darling Bertolini and the Annie R. Tinker Memorial Home.

Upon the agreement of May 30, 1924, the exhibits and testimony in the case, I admit the will to probate.

I shall appoint Edward L. Tinker of Setauket, L. I., brother of the deceased, and William Woart Lancaster of Manhasset, L. I., administrators with the will annexed of the deceased.

Decree accordingly, to be settled upon notice.