In the Matter of the Estate of ANNIE R. TINKER, Deceased.

KATE DARLING BERTOLINI and Another, Appellants; EDWARD L. TINKER, Individually and as Administrator, etc., of ANNIE R. TINKER, Deceased, Respondent.

Second Department, June 25, 1926.

**Wills — contract between sole beneficiary and heir at law and next of kin to avoid contest — contract provided for equal division and that share of beneficiary and of next of kin should include certain specific property — agreement construed to require valuation of said specific property as of date of death of testatrix and valuation of remainder of estate as of date of distribution.**

A contract entered into between the sole beneficiary of a will and the next of kin and the heir at law for the purpose of avoiding a contest of the will, which provided for an equal division of the property between the sole beneficiary and the next of kin and which contained a provision that the share of the sole beneficiary should include certain specified property and that the share of the next of kin should include certain other specified property, up to one-half of the value of the estate, is construed to require the valuation of the specified property mentioned as of the date of the death of the testatrix and the valuation of all other property as of the date of distribution.

APPEAL by Kate Darling Bertolini and another from an order of the Surrogate's Court of the county of Suffolk, entered in the office of said Surrogate's Court on the 17th day of May, 1926,

Second Department, June, 1926.      [Vol. 217

construing and judicially determining an agreement relative to arbitration, distribution and valuation of property owned by the decedent.

*Frank M. Avery* [*Earl A. Darr* and *William A. Moore* with him on the brief], for the appellants.

*Robert P. Griffing* [*William H. P. Oliver* with him on the brief], for the respondent Edward L. Tinker, individually and as administrator, etc.

Manning, J. The appeal is from an order of the surrogate of Suffolk county, made, after a reargument, on the 17th day of May, 1926, which order construed a written agreement between the heirs and next of kin and the beneficiary under the alleged last will and testament of Annie R. Tinker, deceased.

Annie R. Tinker, a resident of Suffolk county, died on the 21st day of February, 1924. She was survived by her mother, Louise Laroque Arnold, and her brother, Edward L. Tinker. By an alleged holograph will, signed at Naples, Italy, on the 27th day of June, 1918, she disposed, or attempted to dispose, of her estate in the manner following:

" I * * * do hereby bequeath * * * unto Kate Darling Nelson of Montreal, Canada, my entire property real and otherwise that I may die possessed of for her sole benefit and use during her life time, it being understood however that upon her death the principal is to be donated to a Benevolent Home for Ladies who have worked for their living. This donation is to be called ' The Henry C. Tinker Bequest ' and the choice of the Home is. to be left entirely to the wise judgment of my friend Kate Darling Nelson.

" I hereby revoke all former wills and codicils made by me.
                  " (Signed) ANNIE R. TINKER.
" Naples, Italy, 27th of June, 1918."

The Kate Darling Nelson mentioned therein is now Kate Darling Bertolini, of San Remo, Italy, one of the appellants herein. The decedent's estate, of the gross value of nearly $2,500,000, consisted, in part, of shares of stock of the Tinker Realty Corporation, and of real and personal property at East Setauket, L. I.

The heirs and next of kin did not remain quiescent, and Mrs. Bertolini had to choose between an agreement and a contest. A parley was had, and an agreement, known in the proceeding as the " Paris Agreement," was, on May 30, 1924, entered into between Mrs. Bertolini, on the one hand, and the mother and brother of

the decedent on the other.    Our task is to construe that agreement. The agreement reads:

" AGREEMENT made this 30th day of May, 1924, Between Kate Darling Bertolini, formerly Kate Darling Nelson, and now wife of Luigi Bertolini, and assisted by him in so far as need be, both domiciled at San Remo, Italy, and temporarily sojourning in Paris, France, party of the First Part and Louise Larocque Arnold and Edward L. Tinker, both residents of the State of New York, U. S. A., parties of the Second Part,

" WHEREAS Annie R. Tinker, daughter of the said Louise Larocque Arnold and sister of the said Edward L. Tinker, died on February 21, 1924, leaving a paper writing in the nature of a holographic will purporting to have been executed in Naples, Italy, on June 27, 1918, without witnesses, whereby she gave or attempted to give her whole estate to the party of the first part for life and which document further provides that, on the death of the said Kate Darling Nelson, the whole estate is to be donated to a benevolent Home for Ladies who have worked for their living, to be chosen in the absolute discretion of the said party of the first part, a copy of which document is hereto annexed (marked Exhibit A); and

" WHEREAS said Louise Larocque Arnold is the sole next of kin of said Annie R. Tinker and Edward Larocque Tinker, brother of the decedent is the sole heir at law, his interest as such being subject to any life estate which his mother, said Louise Larocque Arnold, may have in any real estate of said Annie R. Tinker, deceased; and

" WHEREAS the said next of kin and heir at law contend that the said Will was not validly executed and if validly executed, contend that certain attempted dispositions of property under said Will are contrary to the laws of the State of New York and consequently void or voidable; and

" WHEREAS the party of the first part asserts that said Will is validly executed under the laws of the State of New York and disputes the said contentions of the said parties of the second part,

" *Now therefore*, the parties hereto in consideration of the premises and of the mutual promises hereinafter set forth, do agree as follows:

" 1. That the net estate as hereinafter defined of said Annie R. Tinker, deceased, shall be divided equally between the party of the first part and said Louise Larocque Arnold;

" 2. That said party of the first part shall, out of her share in said estate, make provision for any charity which she may designate pursuant to the terms of the said alleged testamentary document, such provision to be upon such terms and in such

17

amounts, not less than $150,000, as she may agree upon with such charity; that she hereby agrees to proceed with such designation of such charity with reasonable dispatch;

" 3. That the parties hereto consent that William Woart Lancaster of Manhasset, Long Island, and said Louise Larocque Arnold, or in her stead, her brother Joseph Larocque shall be appointed co-administrators with the will annexed, such appointment of a co-administrator with the said William W. Lancaster not to affect the fees which he would have received had he been appointed sole administrator; that Shearman & Sterling, attorneys and counsellors at law with an office at 55 Wall Street, * * * shall be the attorneys of the said administrator, William W. Lancaster; and that the said will may be probated in the County of Suffolk, Long Island, where said Annie R. Tinker deceased, was domiciled at the time of her death.

" 4. That the term ' net estate ' herein used shall be interpreted to mean the residue of the estate of said Annie R. Tinker, deceased, after the deduction of all inheritance, income and other taxes, whether foreign, Federal, State, County or Municipal, and after deduction of all assessments and all expenses of administration and after payment of the debts of the estate;

" 5. That in making the division of the estate, the 500 shares of stock of the Tinker Realty Corporation which form a part of the estate of the decedent shall be allocated to the shares of Louise Larocque Arnold in so far as the value of the same shall not exceed the one-half of the net estate; and in case the 500 shares should exceed in value one-half of the net estate, the said Edward L. Tinker shall have option to purchase such of the shares as may have been allocated to said party of the first part at their agreed or appraised value as hereinafter provided, said option to be exercised within six months after the giving of a written notice by anyone of the administrators to said Edward L. Tinker that the estate is ready for distribution; and that any payment to the said party of the first part on account of her one-half interest in the estate shall be made in such manner as to include in her one-half interest the real estate and other property of said decedent at East Setauket, Long Island, in said county of Suffolk, in so far as the value of the same shall not exceed one-half of the net estate, the value of the said real estate and said property as well as the value of the said 500 shares for the purposes of all payments and allocations to be determined as hereinafter provided:

(There is no paragraph 6.)

" 7. That in allocating to one or the other of the said Louise Larocque Arnold and said party of the first part, real or personal

property in carrying out the terms of paragraph 1 hereof, such real estate or personal property shall be valued by mutual agreement of the said Louise Larocque Arnold and said party of the first part provided that if the said Louise Larocque Arnold and the said party of the first part are unable promptly to agree upon such valuation then each of the said parties shall forthwith appoint one arbitrator whose determination as to value shall be final if they can agree, and in the event of their disagreement, the said two arbitrators shall forthwith appoint an umpire whose decision shall be final. The expense of such arbitration shall be considered an administration expense and the determination of value shall be as of the date of death.

" 8. It is admitted that on October 9th, 1923, said Annie R. Tinker, deceased, made a gift inter vivos to said William W. Lancaster of $100,000. Of this amount, Mr. Lancaster has received during her lifetime $5,000 in cash and securities of the approximate market value of $79,000. It is agreed that the balance of the said gift shall be considered an obligation of the said estate existing at the time of the death of the said Annie R. Tinker;

" 9. That this agreement shall be construed according to the law of the State of New York;

" 10. The parties hereto release any and all claims they may have against the estate of Annie R. Tinker, deceased, except as herein provided, it being understood that nothing herein contained shall be construed as in any way affecting the right of said Louise Larocque Arnold to receive the income accruing from the securities held by the New York Trust Company as Trustee under a certain deed of trust executed in her favor by said Edward L. Tinker and said deceased.

" *In Witness Whereof* the parties hereto have set their hands and seals the day and year first above written.

" KATE DARLING BERTOLINI    [L. s.]
" LOUISE LAROCQUE ARNOLD    [L. s.]
" EDWARD L. TINKER,
" Pro proc. JOS. LAROCQUE [L. s.]

" I hereby authorize the execution of the foregoing agreement by my wife.

" LUIGI BERTOLINI."

Certain portions of the estate having appreciated since the date of Miss Tinker's death, a dispute arose as to the time at which, under the agreement, the value should be determined. .

The claim of Mrs. Bertolini is that the valuation of all the property should be made as of the date of death. In an affidavit submitted in her behalf it is stated that the 500 shares of stock

of the Tinker Realty Corporation exceed in value one-half of the entire estate, and that if such shares " be taken over by Mrs. Arnold and Mr. Tinker at the February 21st, 1924, valuation, and the rest of the estate, other than the property at Setauket be valued as of the date of distribution, gross inequality will result."

Undoubtedly the stock of the Tinker Realty Corporation has greatly increased in value since the death of Miss Tinker; and in her brief Mrs. Bertolini states:

" The question before this Court may be stated thus: Is the Paris agreement susceptible of an interpretation which will allow the respondents to take said Tinker Realty Corporation stock as of its value on February 21st, 1924, the date of the death of the decedent, and, to the exclusion of appellants, to reap the sole benefit of the large increase in the value of such stock since that date and also allow said respondents to share equally with the appellants in any increase which has taken place in the other property of the estate since such date?     *     *     *

" Since the shares of the Tinker Realty Corporation stock exceed in value one-half of the net estate and since a portion of them, equal to one-half of said net estate is, under paragraph 5, to be allocated to Louise Larocque Arnold, it follows that, of necessity, not only are the rest of the shares of the Tinker Realty Corporation stock allocated to Kate Darling Bertolini (subject to the option of Edward L. Tinker) but the rest of the estate is allocated to her.

" It is, therefore, manifest that paragraph 7 of the agreement in speaking of allocating to one or the other of Louise Larocque Arnold and Kate Darling Bertolini, real or personal property in carrying out the terms of paragraph 1, referred to an allocation of all the real and personal property — the entire estate — to them. And it is equally clear that under paragraph 7 the determination of the value of such real estate or personal property — i. e., of the whole estate — must, by the terms of paragraph 7, be as of the date of the death of the decedent. This is plain from the wording of paragraphs 5 and 7.     *     *     *

" To value the Tinker Realty Corporation stock and the Setauket property as of the date of death and the rest of the estate as of the date of distribution would be to work out an injustice to one party or the other and would frustrate the object of the agreement — that the estate should be divided equally. It would mean a speculation as to the rise or fall in the value of the assets of the estate between the date of the death of the decedent and the distribution of the whole estate. Who would benefit by such a speculation would, of course, have been uncertain. It certainly

was not the intent of the agreement that there should be a speculation as to either party, or that either party should benefit by such a speculation, or that either party should sustain a loss. It was and is fair and just to both parties to have the valuation of the whole estate as of the date of death; it would be unfair and unjust to one party or the other to have the valuation as of different dates. Such an agreement would be one-sided and to find such one-sided agreement a court would have to be constrained by the plain wording of the contract."

It might be convincing if it could be shown that at the time the Paris agreement was executed the parties were aware of the fact that said stock exceeded in value the remainder of the estate. But such does not appear to be the fact; for if the parties did know this it would have been senseless to incorporate in paragraph 5 the provision that " any payment to the said party of the first part on account of her one-half interest in the estate shall be made in such manner as to include in her one-half interest the real estate and other property of said decedent at East Setauket, Long Island, in said county of Suffolk, *in so far as the value of the same shall not exceed one-half of the net estate.*"

The claim of the respondents is that only stock of the Tinker Realty Corporation and the property, real and personal, at East Setauket, should be valued as of the date of death, and that the remainder of the estate should be valued as of the date of distribution.

When the dispute over the date of fixation arose, cross-motions were made to have the agreement judicially construed, and the question came before Surrogate PELLETREAU, who made an order reading in part as follows:

" *Ordered,* that the value of the stock of the Tinker Realty Corporation be fixed as of the date of the death of the decedent. That such value be arrived at by agreement if possible, and if agreement is not possible, that such value be fixed by arbitration in the manner provided in the Paris agreement of May 30th, 1924, and it is further    *    *    *

" *Ordered,* that the value of 500 shares of stock of Tinker Realty Corporation, the value of the real estate in East Setauket, Long Island, of which decedent died seized, and the value of other property of the decedent at East Setauket, Long Island, are the only values of assets of this estate to be determined as of the date of the death of decedent."

It is from this order that the appeal is taken.

The respective properties were to be specifically delivered. In so far as it did not exceed in value one-half of the estate, Mrs. Arnold

Second Department, June, 1926.          [Vol. 217

was to receive the stock of the Tinker Realty Corporation, her son
to have the option of purchasing such of the shares as might exceed
one-half thereof. In so far as it did not exceed one-half of the
estate, Mrs. Bertolini was to receive the property, real and personal,
at East Setauket. So, for the purpose of determining whether
the respective properties fell short of, equalled or exceeded one-
half of the estate, it became necessary to have their value fixed.
The agreement stated: " the value of the said real estate and said
property as well as the value of the said 500 shares for the purposes
of all *payments* and *allocations* * * *." The provision there-
inafter made was that in " allocating " property to one or the other
of the parties for the purpose of effecting an equal division of the
estate, " the determination of value shall be as of the date of
death." The properties that are to be allocated are stated in the
agreement. They are the Tinker corporate stock and the East
Setauket property. Mrs. Bertolini contends that the word " allo-
cating," as used in the 7th paragraph of the agreement, is not
to be taken in a restrictive sense, but should be regarded as
meaning " dividing " or " paying " or " distributing," and she
points to the omission of " said " before the words " real or personal
property," in the 3d line of paragraph 7, as indicating that
the parties intended that the provision for the determination of
value as of the date of death had reference, not to the specified
properties alone, but to all of the property comprising the estate.
There would be some ground for the argument if in the language
of the agreement there was anything to indicate an intention to
regard " allocation," as used throughout the agreement, as meaning
" payment " or " distribution " in the general sense, or to regard
" allocating," as used in the 7th paragraph, as meaning " paying "
or " distributing " in the general sense. There is, however, nothing
to indicate such an intention. On the contrary, the agreement
shows on its face that the parties had the distinction in meaning
clearly in mind. Thus, in the first line of paragraph 5 it is provided
that in the " division " of the estate the specified properties shall
be " allocated; " further on in the same paragraph reference is
made to the estate being ready for " distribution," and, towards
the close, we have the words " all *payments* and *allocations*." This,
surely, does not indicate synonymity but suggests, rather, a nice
distinction in meaning between " payment " and " allocation."
Furthermore, one cannot escape the fact that the determination
of value as of the date of death is, by paragraph 5, distinctly limited
to " the said real estate and said property " (*i. e.*, the real
and personal property at East Setauket) and to " the said 500
shares " (*i. e.*, the shares of stock of the Tinker Realty Corporation).

It is true that the agreement contemplated an equal distribution of the estate; but the equal distribution, as to certain specified portions, was to be based upon a valuation to be determined as of a certain date, and I cannot see how we can disturb the plain wording of the agreement and hold otherwise.

The order of the Surrogate's Court of Suffolk county should be affirmed, with costs to all parties, payable out of the estate.

. Kelly, P. J., Young, Kapper and Lazansky, JJ., concur.

Order of the Surrogate's Court of Suffolk county construing a written agreement between the beneficiaries under a will affirmed, with costs, payable out of the estate, to all parties appearing and filing a brief in this court.