SUSAN FISHER et al., Appellants, *v.* ALBERT A. FISHER, Respondent, and GERTRUDE BRADY et al., Appellants.

(Argued February 13, 1930; decided March 18, 1930.)

*Eugene L. Klocke* for plaintiffs-appellants, and *Daniel N. McNaughtan* for Liberty Bank et al., defendants-appellants. There are no contingent remainders in unborn grandchildren of testator under the will and the property vested in the six children of testator. (*Stokes* v. *Weston*, 142 N. Y. 433; *Appell* v. *Appell*, 177 App. Div. 571; 221 N. Y. 602; *Sawyer* v. *Cubby*, 146 N. Y. 192; *Camman* v. *Bailey*, 210 N. Y. 19; *Macy* v. *Burchell*, 131 Misc. Rep. 602; 223 App. Div. 702; 248 N. Y. 637; *Connelly* v. *O'Brien*, 166 N. Y. 408.) Section 73 of the Real Property law and section 24 of the Personal Property Law are constitutional. (*Chauvet* v. *Ives*, 173 N. Y. 194; *Schoonmaker* v. *Gray*, 208 N. Y. 214; *Matter of Tinker*, 124 Misc. Rep. 723; 217 App. Div. 255; 244 N. Y. 51; *Matter of Field*, 115 Misc. Rep. 734; *Matter of Bemis*,

116 Misc. Rep. 516; *Matter of Watson*, 124 Misc. Rep. 222; *Clark* v. *Cordis*, 4 Allen, 466; *Loring* v. *Hildreth*, 170 Mass. 328.)

*Frederick F. Grotz* for Gertrude Fisher et al., defendants-appellants.

*Omar G. Olds* for respondent.

CRANE, J. Section 73 of the Real Property Law (Cons. Laws, ch. 50) and section 24 of the Personal Property Law (Cons. Laws, ch. 41), now embodied in section 19 of the Decedent Estate Law (Cons. Laws, ch. 13), give to the Supreme Court or the Surrogate's Court, having jurisdiction, the power to authorize executors, administrators and trustees to adjust by compromise any controversy that may arise between different claimants to the estate or property in their hands, to which agreement such executors, administrators or trustees and all other parties in being who claim an interest in such estate, shall be parties in person or by guardian. Power is likewise given to these courts to authorize the person named as executor in an instrument purporting to be the last will and testament of a deceased person or the petitioners for administration with such will annexed, to adjust by compromise any controversy that may arise between the persons claiming as devisees or legatees under such will, and the persons entitled to or claiming the estate of the deceased under the Statutes of Descent and Distribution. Where an infant, lunatic, person of unsound mind or habitual drunkard is a necessary party to the compromise, he shall be represented in the proceedings by a special guardian who shall in the name and on behalf of the party he represents make all proper instruments necessary to carry into effect the compromise sanctioned by the court.

There is contained this provision regarding unknown

and future contingent interest: " (d) If it appears to the satisfaction of the court that the interests of persons unknown or the future contingent interests of persons not in being are or may be affected by the compromise, the court must appoint some suitable person or persons to represent such interests in the compromise and to make all proper instruments necessary to carry into effect any compromise that is sanctioned by the court."

Compromises of conflicting interests in estates to avoid the cost and expense of litigation were not unknown to the law prior to this statute. (*Chauvet* v. *Ives*, 173 N. Y. 192.) Not until this action do we find that the meaning or constitutionality of the provisions of the statute have been challenged, although a few cases indicate that the law has been referred to and applied. (*Matter of Tinker*, 124 Misc. Rep. 723; 217 App. Div. 255; 244 N. Y. 51; *Matter of Field*, 115 Misc. Rep. 733, 734; *Matter of Bemis*, 116 Misc. Rep. 516; *Matter of Watson*, 124 Misc. Rep. 216, 222.)

In none of these cases did the questions here presented arise, nor were the points referred to or discussed.

Our attention on this appeal is directed to that part of this section which refers to the contingent interest of unknown persons. May the courts authorize the settlement of a controversy over a will or an estate which affects or wipes out such interest?

The power of the State to regulate the tenure of real property within its limits and the modes of its acquisition and transfer and the rules of its descent and the extent to which a testamentary disposition of it may be exercised by its owners is undoubted. Every person must will his lands and property in accordance with and subject to the conditions and limitations provided by statute, or else he cannot will them at all. His power is bounded by the conditions prescribed. (*United States* v. *Fox*, 94 U. S. 315.) For illustration, the rights of dower and of curtesy may be wiped out altogether or modified, as

has been done by the recent Decedent Estate Law (Laws of 1929, ch. 229). Trusts may not be created except for two lives in being. The suspension of the power of alienation of an estate for a longer period is void and of no effect. (Real Prop. Law, § 42.) Testamentary gifts to charitable and religious associations of more than one-half of the testator's estate in certain circumstances are prohibited. (*Decker* v. *Vreeland*, 220 N. Y. 326.) Many other illustrations showing the power of the Legislature over the disposition of property may be cited, but these are sufficient to indicate that contingent remainders may be abolished or subjected to compromises made in good faith to settle contests over wills and estates. Of course any such laws can only apply to those instruments of transfer taking effect after the date of enactment.

A similar statute has been under review by the Supreme Court of Massachusetts in *Copeland* v. *Wheelwright* (230 Mass. 131). " There is nothing," said that court, " in the express terms of the statute which prevents the entire extinguishment by agreement of a future contingent interest in appropriate circumstances. Such an interest may be so remote, and its actual enjoyment so improbable that its retention would appear to be nothing more substantial than a film of mist." A word of caution, however, was given to guardians appointed for such interests to use the most scrupulous care to see that the compromise viewed with a reference to the basis for contest is just and reasonable in all its aspects, including its effect upon future contingent interests. That court further said: " The statute in question may be treated as a provision to the effect that, where a will creates future contingent interests, the precise extent to which it shall be executed, in cases where all other parties in interest in the estate make an agreement upon that subject, shall depend upon a judicial decree entered upon general principles of justice and reason following a full investigation and report by an independent officer appointed by

the court. The general interest of the public that property shall not be entangled by the impalpable and unreal possibility of uncertain and improbable contingencies springing up in the future, might support such an enactment."

How far these sections of the Real and Personal Property Laws go, or may legally go in wiping out vested or contingent interests by a compromise among living persons, we do not at this time determine. We limit the present review of this statute to the holding that, where an unknown contingent interest may or may not exist under the terms of the will — where, by a fair or reasonable construction of the instrument there may be no contingent interest, the whole matter being one of doubt and subject to interpretation — then in such a case the statute empowers the Surrogate's Court to determine judicially that there is no contingent interest affected, and to authorize a settlement of a contest or controversy over the will.

The facts on this appeal call for the application of this section as thus explained.

Joseph E. Fisher was a resident of the city of Buffalo, where he died on the 11th day of August, 1928, leaving a last will and testament, by which he devised and bequeathed to his brother Albert A. Fisher, as trustee, all his share and interest in the business conducted by his brother and himself, under the firm name of Martin Fisher & Sons, including all the assets thereof, all property, both real and personal, owned by them as copartners or as tenants in common. This devise and bequest, however, was in trust to carry on the business or to sell or mortgage the property and to divide it into trusts for the testator's wife and six children (as he called them). One-quarter of the principal was to be held in trust for the wife during her life, and then added to the trusts for the children. The remaining three-quarters of the principal was to be divided into six separate trusts for

the six children. Four of these children, ranging in age from eighteen to twenty-five, were by the testator's first wife, and constituted his heirs at law and next of kin; the other two children were children of the second wife, Genevieve P. Fisher. The Liberty Bank of Buffalo and Albert A. Fisher were named as executors of the will, and Albert A. Fisher as trustee thereunder. The net value of the estate left in trust is about $62,000. *There were no grandchildren living at the testator's death.*

When the will was offered for probate, objections were filed by the testator's four children. The relations of the widow, the second wife, and the four older children, who were by the first wife, were unfriendly. These children were dissatisfied with the terms of the will and employed counsel to contest its probate on the ground of the testator's incompetency. Five months after the death of Joseph E. Fisher all the parties interested in the probate proceedings, including the special guardians and the executors and trustees, entered into an agreement of compromise, pursuant to section 73 of the Real Property Law and section 24 of the Personal Property Law. This agreement was approved by the Surrogate of Erie county on the 4th day of February, 1929. Thereafter and on May 29, 1929, a supplementary agreement was executed and approved by the said Surrogate on June 11, 1929. These agreements in effect wiped out the trust provisions in the will and vested the property absolutely in the beneficiaries named, in the proportions therein stated, Albert A. Fisher, the brother, agreeing to pay certain sums specified for the interest of the deceased in the personal and real property of the firm. The trusts set up in the will were to be created out of Fisher's copartnership interest in the business in which he and his brother Albert were partners. This necessarily complicated the situation. The winding up of the business, if necessary, might have materially affected the value of the assets. The brother, therefore, by this agreement agreed to

purchase the testator's interest. The value of the real property which he agreed to purchase was to be reached by three appraisers, members of the Buffalo Real Estate Board. The details of these agreements need not be given in full, as they are not material to the controversy before us.

The Surrogate, on an application for approval, heard the matter fully, and by his two orders, one of February 4, 1929, and the other of June 11, 1929, approved, sanctioned and ratified and confirmed the agreements, and authorized the executors to adjust the controversy as agreed. These orders recite the appointment of a guardian for all the infants and a special guardian to represent unknown persons and future contingent interests of all persons not in being. The orders also recite notice to all parties of the hearing before the court as to the merits and propriety of the settlement.

The proceedings to probate the will were in the Surrogate's Court of Erie county. The application for the settlement of the contest was pursuant to the sections of the Real and Personal Property Laws, above given, so that the Surrogate's Court had full and complete jurisdiction of the subject-matter and of all the parties. Did the Surrogate have the power to make the order annulling the trust provisions of the will, and approving the compromise agreement which vested the principal or corpus of the estate absolutely in the widow and the six living children? In other words, could the decree or order of the Surrogate thus dispose of the contingent interest of unknown or unborn persons?

According to the rule which we are to apply, as above stated in this opinion, the answer for this case depends upon whether there was reasonable uncertainty as to the existence of any contingent interest. If the provisions of the will in this particular were doubtful, presenting a juridical question, and the Surrogate, in the exercise of his jurisdiction, construed the will as not giving any

interest in the property to unknown persons, then his conclusion that the property could be divided between living persons was valid and binding on all courts. We think that the Surrogate was justified in thus viewing the will. It is by no means clear that there are any contingent interests.

The paragraph presenting this question reads as follows: " The principal sums of the several trusts set up for my children living at my death shall be paid to each child respectively when said child becomes forty-five years of age, or in case the said child dies before reaching the age of forty-five years, said corpus to be held in trust until the youngest issue of said child in being at my death becomes thirty years of age or sooner dies, in either of which events the corpus of said trust shall go to the heirs of my said child.

" In case of a child who has predeceased me, the trust for the issue of said child shall terminate when the youngest issue of said child in being at my death becomes thirty years of age or sooner dies, in either of which events the corpus of said trust shall go to the heirs of my said child."

We see in these words that the trust set up for a child (and for precision we will deal with one trust only) is to terminate when the child becomes forty-five years of age, for at that time the corpus, or principal, is to be paid to him and the trust is to terminate. Provision is made by the testator for the payment over in case the child die before forty-five in only two instances, neither of which can now occur. A grandchild must be in existence at the time of the testator's death. If there be such a grandchild, the trust is to continue until that grandchild becomes thirty years of age; or if he dies sooner, then the property shall go to the heirs of the child dying before forty-five. The testator failed to make any provision where there was no grandchild in existence at the time of his, the testator's, death. If the child for whom the trust was created, therefore, die before he is forty-five

years of age, there being no grandchild in existence at the time of the testator's death, what is to become of the corpus of the trust? It may be said with some reason that in such an instance there is intestacy and the corpus would go to the heirs or next of kin of the testator. The child for whom the trust was created would be such heir or next of kin. Grandchildren born after the death of the testator would, therefore, have no contingent interest under the testator's will. If they ever received any property of the testator's, it would be by way of limitation and not by purchase.

Again, we may view this provision of the will as meaning that if there were no grandchild living at the death of the testator, the child for whom the trust was created took absolutely and in all events. That is, the property was vested in the child and his heirs or next of kin, subject only to the condition that the principal should not be paid over to him until he arrived at forty-five years of age.

Whatever the proper construction of this will may be, the uncertainty is quite apparent. The possible contingent interests of grandchildren born after the testator's death are so remote, indefinite and vague as to bring this will within those salutary provisions of the Real and Personal Property Laws permitting settlements and agreements to be made of will contests in order to avoid loss and expense.

The orders and decrees of the Surrogate permitting the settlement were, therefore, legal and valid, and as no appeal was taken from them, cannot be attacked collaterally. No attempt has been made to set them aside on the ground of fraud. They stand binding on all courts and on the parties to this controversy which arises as follows:

The title to the real estate of the partnership and to the personal property was disposed of by the compromise agreements. Albert A. Fisher, the brother, and surviving partner, was to purchase this property from the heirs and

next of kin. He refused to carry out the agreements, no doubt with a view of having the courts pass upon the validity of the Surrogate's decrees. The Special Term of the Supreme Court in this action for specific performance gave judgment for the plaintiffs, directing Albert A. Fisher to carry out and perform his agreement. The judgment of the Appellate Division should be reversed, and that of the Special Term affirmed, without costs in this court or in the Appellate Division.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.