In the Matter of the Estate of PATRICK J. O'KEEFFE, Deceased.

Surrogate's Court, New York County, March 23, 1938.

*John J. O'Grady, Jr.*, for John J. O'Grady, executor and trustee.

*Daniel Diamond*, for Rudolph O'Keeffe, son, Agnes M. Picon, daughter, and Anastasia Coffey, daughter, life tenants.

*Franic X. Colety*, for Richard H. O'Keeffe and Mary O'Keeffe, beneficiary remaindermen, life tenants.

*Thomas Jefferson Ryan*, for Anastasia O'Keeffe, widow and life tenant.

*Jacob Fisher*, for Julia Moylan and Nora Moylan, life tenants.

*Francis L. Valente*, special guardian for Gloria Patricia Picon, Anthony Picon, James Picon, Richard Howard O'Keeffe, Jr., and Robert O'Keeffe, infants.

*Beam & Cullen*, for Anna Bader, legatee and sister of decedent.

FOLEY, S. A preliminary issue requiring determination in this contested accounting proceeding involves an attack upon the validity of a written agreement made by the four surviving children of the testator after his death. The agreement was entered into in order to avoid a threatened contest of the will which had been offered for probate. A compromise of the controversy that had arisen between

the parties in respect of their rights and interests in the estate under the will was thereby effectuated and after the execution of the instrument the will was admitted to probate without contest. The agreement provided for the distribution of the income of the trusts under the will and for the division of the principal of the trusts in a manner different from that directed by the terms of the will. It was agreed by the parties that the accrued income of all of the trusts established by the will for their benefit, or for the benefit of any one of them, should be divided among them equally during their respective lives, and that upon the termination of the trusts, where it was provided in the will that the principal be paid to any one of them, such principal should be paid to all of them, or the survivors of them, share and share alike.

For the period of four years the parties to the agreement acquiesced in the compromise. Its terms were carried out by all of them until July 19, 1937, when Richard H. O'Keeffe, one of the participants, gave notice by letter of his disaffirmance of the agreement and of its revocation by him. He now contends that the agreement was illegal and contrary to public policy because it contravened our statutes prohibiting the alienation of income of express trusts. (Pers. Prop. Law, § 15; Real Prop. Law, § 103.) He makes no attack upon the division of the principal of the trusts provided for in the agreement.

I hold that the agreement is unquestionably valid and binding. No claim is made that under its terms the rights of creditors or the rights of infants or incompetents or of other beneficiaries under the will were in any way defeated or impaired. The attorney for the party who seeks to set aside the agreement expressly stated upon the argument that he asserts no charge of fraud or imposition in the execution of the instrument nor collusion between the parties in the settlement of their controversy. Agreements of compromise in estates made in the absence of bad faith, imposition, fraud or collusion, have consistently received the approval and ratification of our courts and have been given vigorous support by them. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63; *Schoonmaker* v. *Gray*, 208 id. 209; *Matter of Pruyn*, 141 id. 544; *Matter of Wagner*, 119 id. 28, 37; *Slater* v. *Slater*, 208 App. Div. 567; affd., 240 N. Y. 557; *Matter of Waters*, 183 App. Div. 840; *Minehan* v. *Hill*, 144 id. 854; *Matter of Beresford*, 146 Misc. 140; *Matter of Booth*, Id. 70; *Matter of Katz*, 155 id. 623; *Matter of Crowe*, 139 id. 648, 651.) They have been sanctioned and encouraged, particularly in family controversies, in order to avoid the burdensome expense, annoyance and inconvenience of litigation.

In *Matter of Cook* (244 N. Y. 63), Judge CRANE (now Chief Judge) summed up the law regarding compromises in estates in the following emphatic language: " There has never been any question about the agreements made between the heirs or next of kin and the representatives of an estate *after* the death of a testator regarding settlements and compromises. These have always been held to be good, when made in good faith, and not against public policy."

No question of the lack of good faith or the violation of public policy is here involved. The contract between the parties to divide the income of the trusts contrary to the terms of the will was not void or against public policy as an assignment of income prohibited by the statutes (Pers. Prop. Law, § 15; Real Prop. Law, § 103), since its terms were settled and entered into before the will was admitted to probate. There appears to be " no rule of public policy which prevents those interested in an estate from agreeing upon the manner of its distribution so as to avoid the expense and trouble of litigation." (*Schoonmaker* v. *Gray*, 208 N. Y. 209, 214.) At the date of the execution of the agreement, the trusts under the will had no legal existence. The effect of the compromise was to alter the provisions of the will and to permit of its admission to probate, subject to the terms of the agreement. Only after the probate of the will and the setting up of the trusts did the statutes against alienation of income become applicable under the public policy of our State requiring that the rule of indestructibility of trusts be rigidly enforced. (*Matter of Wentworth*, 230 N. Y. 176.)

Strong support for sustaining the validity of the compromise agreement in question may be found in *Fisher* v. *Fisher* (253 N. Y. 260). There, conflicting interests in an estate were asserted before probate and an agreement of compromise of such interests was entered into. The Court of Appeals upheld the surrogate's decree approving the compromise agreement which eliminated the trust provisions under the will and vested the principal of the estate outright in the beneficiaries. If, in a proper case, in order to settle disputes and prevent litigation, the extinguishment in their entirety of trusts created by a will is authorized, certainly, for similar reasons, the distribution of income of trusts in proportions different from those directed by a will may be sustained. The extent to which courts have gone in approving adjustments of disputes in estates is disclosed in *Minehan* v. *Hill* (144 App. Div. 854). In that case a sole heir and next of kin of the decedent made an agreement with a person who claimed that the decedent had promised to make a will giving her all of her property, to divide the estate equally between them at a time, after the death of the decedent, when it

was not known whether or not a will had been executed. After the execution of the agreement, it developed that the decedent had made a will leaving her entire estate to her husband. Because, however, of her husband's death prior to her own, the will became inoperative and her property passed to the sole heir and next of kin as in intestacy. Action was brought to compel the latter to turn over one-half of the estate pursuant to the compromise. An attempt by the next of kin to abrogate her agreement and to keep the entire estate was defeated by the courts, the agreement being upheld as valid and effective. The Appellate Division in that case said: " Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised."

The agreement here attacked will be sustained and enforced by the court.

The remaining issues raised by the objections to the account will be heard by me on the 29th day of April, 1938, at ten-thirty A. M.. The attorney for the executor is directed to serve notice of hearing and file same with proof of service, with the clerk of this court, on or before April 15, 1938.